Sarvis *v.* Boston Safe Deposit and Trust Company.

ROBERT A. SARVIS & another[1] *vs.* BOSTON SAFE DEPOSIT AND
TRUST COMPANY & others.[2]

No. 97-P-1412.

Suffolk. December 11, 1998. - June 9, 1999.

Present: KASS, DREBEN, & SPINA, JJ.

*Massachusetts Civil Rights Act. Civil Rights,* Availability of remedy, Coercion
by third party, Damages. *Statute,* Construction. *Corporation,* Officers and
agents. *Agency,* Scope of authority or employment. *False Imprisonment.*
*Res Judicata. Practice, Civil,* Instructions to jury. *Damages,* Remittitur.

In a civil action alleging violations of the Massachusetts Civil Rights Act,
G. L. c. 12, §§ 11H-11I, the evidence demonstrated that the defendant
bank, its agent, and its employee threatened the plaintiffs with arrest and
caused them to be arrested for alleged trespass, in violation of the plaintiffs'
right to a summary process proceeding under G. L. c. 239, § 1, and G. L.
c. 184, § 18, which constituted "threats, intimidation, or coercion" under
the act. [91-94] KASS, J., concurring.

This court concluded that a corporation, a private employer, was vicariously
liable under a theory of respondeat superior for violations of the Mas-
sachusetts Civil Rights Act, G. L. c. 12, §§ 11H-11I, committed by an
agent of the corporation acting on its behalf and within the scope of
employment. [94-97] KASS, J., concurring.

In a civil action, the evidence warranted findings that the defendant bank's
employee was acting on the bank's behalf and within the scope of his
employment when he violated the plaintiffs' civil rights. [97]

In a civil action, defendants, by having requested that police arrest the
plaintiffs for trespassing, knowing there was no lawful basis for the request,
were liable for false imprisonment for the plaintiffs' consequent confine-
ment. [97-98]

Plaintiffs in a civil action, who were not either a party or in privity with
another who had litigated similar claims against the same defendants, were
not barred by principles of res judicata from litigating their own
independent civil rights and false imprisonment claims against the
defendants. [98-100]

At the trial of civil rights and false imprisonment claims, the judge correctly
and comprehensively instructed the jury on causation, and there was no
prejudice in the omission of instructions on intervening and superseding

[1]Catherine A. Sarvis.

[2]Robert DeChristofaro and Samuel Daume.

causes [100-101], or on a conspiracy theory [101], where the evidence did not warrant such instructions; and there was no other error in the remainder of the instructions which were, as a whole, correct [101-102].

In the circumstances of a civil action, the judge did not abuse his discretion in denying the defendants' motion for a new trial on the issue of damages. [102]

CIVIL ACTION commenced in the Superior Court Department on March 9, 1994.

The case was tried before *David M. Roseman*, J., and motions for a new trial or for remittitur and for judgment notwithstanding the verdict were heard by him.

*Richard I. Rubin* for the plaintiffs.

*Michael C. Gilleran* for the defendants.

SPINA, J. A Suffolk County jury awarded each plaintiff $45,000 on counts of false imprisonment and violations of G. L. c. 12, §§ 11H-11I, the Massachusetts Civil Rights Act (MCRA).[3] The trial judge awarded plaintiffs $105,500 in counsel fees and $4,564.05 in costs under the MCRA. The defendants appeal the denial of their motion for judgment notwithstanding the verdict (judgment n.o.v.), Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), renewing their arguments as to (1) the sufficiency of the evidence; (2) the applicability of respondeat superior to claims under the MCRA; and (3) the defense of res judicata. The defendants also claim error with respect to portions of the judge's charge and to the denial of their motion for a new trial as to damages. We affirm.

We summarize the evidence with reasonable inferences drawn in favor of the plaintiffs, reserving certain details for discussion of the issues. In September, 1989, the plaintiffs' father, Robert H. Sarvis (Mr. Sarvis), executed a $650,000 promissory note in favor of the bank, secured by a mortgage on residential property located at 22 Brant Point Road, Nantucket (property). In October, 1990, Mr. Sarvis defaulted on the note and the bank demanded payment. In June, 1991, the bank published and mailed notice of foreclosure sale, as required by G. L. c. 244, § 14. On June 28, 1991, an affiliate of the bank purchased the property at the foreclosure sale.

---

[3]The jury found for the defendants on the plaintiffs' claims of malicious prosecution, abuse of process, defamation, intentional infliction of emotional distress, and civil rights violations under 42 U.S.C. § 1983. The plaintiffs did not appeal from the judgment on those counts.

After the sale, the plaintiffs, who were twenty-one (Robert) and seventeen (Catherine) years of age, respectively, continued to live at the property with their father and his fiancee, to whom he is now married. They also kept three dogs at the property. The family maintained both telephone and electric service and received mail and telephone calls there. Throughout the summer, the plaintiffs held full-time jobs in the area.

On July 2, 1991, the defendant bank, through its vice-president, defendant Robert DeChristofaro, listed the property with defendant Samuel Daume, an agent with the Lee Real Estate Agency in Nantucket and former employee of the bank. An internal bank memo dated July 8, 1991, indicated that bank counsel had been instructed to begin eviction proceedings against Mr. Sarvis, who "said he had no intention of leaving." On July 10, the bank received a $660,000 cash offer for the property. Laurie Locklin, a bank employee assigned to the disposition of the property, noted in an internal memo that the bank stood to make a $100,000 profit and recommended a "quick close" once the property "[was] vacant."

DeChristofaro wrote to Mr. Sarvis on July 11, 1991, informing him that the bank had changed the locks on the residence and that Sarvis should arrange to remove his remaining personal belongings from the residence. On July 12, bank counsel, acting on behalf of the bank, wrote to the chief of police in Nantucket, advising him that the bank had become owner of the 22 Brant Point Road property through a foreclosure sale, that "certain unauthorized individuals had recently attempted to gain access to [the property]," and that the bank might seek his "assistance if such unauthorized activity persists." Attorney Michael S. Field, representing Mr. Sarvis, acknowledged DeChristofaro's July 11 letter with a phone call, stating that his client had a right to possession of the property and suggesting that they agree upon a date by which Mr. Sarvis would vacate the property. He confirmed their conversation by letter dated July 22. DeChristofaro responded to Field's letter with his own, dated July 30, explaining the bank's "position" that *it* was entitled to possession because Mr. Sarvis had "abandoned" the property and that "any attempt at entry onto the premises will be considered trespassing."

During late July, 1991, Daume visited the property frequently. Whenever he saw the plaintiffs, he told them that they had to leave, or be arrested. If the plaintiffs were not at home, Daume

would leave a note to that same effect. Jeffrey Lee, owner of the Lee Real Estate Agency, spoke with police regarding a loud party the plaintiffs were having at the property on the evening of August 1. The Nantucket police log indicates that shortly after midnight on August 2, Lee told police that "the bank would testify if Sarvis were to be arrested." Police cleared the partygoers from the house shortly after Lee's call. Later that day, Daume called DeChristofaro and informed him that the plaintiff Catherine Sarvis had had a "beer" party at the property the previous night. DeChristofaro directed bank counsel to contact Attorney Field "and put Sarvis on notice [that] any further entry will be subject to trespass and arrest." During the evening of August 4, the Nantucket police received several calls regarding trespassers at the property. At approximately 2 A.M. on August 5, police entered the property and arrested the plaintiffs for trespassing under G. L. c. 266, § 120. The officers designated Jeffrey Lee and the bank as the complainants in the application for criminal complaints against the plaintiffs. The charges were dismissed in December, 1991, for insufficient evidence.

On August 5, 1991, the bank received a $730,000 offer to purchase the property. DeChristofaro, on behalf of the bank, accepted that offer. On August 7, Daume wrote to DeChristofaro, as requested, informing him that he had inspected the property and discovered, despite having changed the locks, that it remained occupied and contained furniture and men's and women's clothing. Daume also wrote that "[t]he only articles removed from the house were food from [the] refrigerator and [the] freezer and trash. The cleaning woman [sent by the bank] removed [only the] garbage, paper, and junk . . . . Nothing else was removed!" Internal bank memos contained entries that, as of September, Mr. Sarvis still had not vacated the property. The bank filed a summary process action against Mr. Sarvis in October. He moved out around mid-October. The bank obtained a judgment for possession on November 5.

1. *Denial of the motion for judgment n.o.v.* a. *The MCRA claim.* (i) *Sufficiency of the evidence.* The defendants argue that they are entitled to judgment n.o.v. because the evidence was insufficient to establish a violation of G. L. c. 12, §§ 11H-11I

(MCRA).[4] In particular, they contend that there was no evidence that they threatened, intimidated, or coerced the plaintiffs or that their actions involved actual or threatened confrontations with the plaintiffs.

Plaintiffs base their MCRA claim on the right not to be evicted except by summary process. See G. L. c. 239, § 1; G. L. c. 184, § 18.[5,6] See also *Attorney Gen.* v. *Dime Sav. Bank of New York, FSB,* 413 Mass. 284 (1992). The defendants have

---

[4]General Laws c. 12, § 11H, as inserted by St. 1979, c. 801, § 1, provides in pertinent part as follows: "Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured."

General Laws c. 12, § 11I, as inserted by St. 1979, c. 801, § 1, provides as follows: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court."

[5]General Laws c. 239, § 1, states in relevant part: "If . . . a mortgage of land has been foreclosed by a sale under a power therein contained or otherwise, or if a person has acquired title to land or tenements by purchase, and the seller or any person holding under him refuses to surrender possession thereof to the buyer, . . . the person entitled to the land or tenements may recover possession thereof under this chapter."

General Laws c. 184, § 18, states in relevant part: "No person shall attempt to recover possession of land or tenements in any manner other than through an action brought pursuant to chapter two hundred and thirty-nine or such other proceedings authorized by law."

[6]Although the defendants raise no issue as to which legal theory or theories (there were two: that there was an unreasonable seizure under the Fourth Amendment and that there was an eviction without due process) the jury accepted under the MCRA, and in view of the fact that the special verdict questionnaire did not ask the jury to specify, we assume that the jury rejected the theory that the defendants conspired with police to violate plaintiffs' rights under the Fourth Amendment, the same theory under which plaintiffs proceeded, unsuccessfully, as to their § 1983 claim. Compare *Adickes* v. *Kress & Co.*, 398 U.S. 144, 152 (1970).

not argued that G. L. c. 184, § 18, does not create a right, the violation of which, by threats, intimidation, or coercion, rises to the level of a civil rights[7] violation under the MCRA. That issue, therefore, is deemed waived. *Warner-Lambert Co.* v. *Ecuquest Corp.*, 427 Mass. 46, 50 n.7 (1998). Our use of the word "right" does not indicate acceptance of the vitality of the claim, and we express no view about that issue.

When reviewing the denial of a motion for judgment n.o.v., we must ask "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989). A jury's verdict must be upheld if a plaintiff has presented evidence from which it could rationally be supported. *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 841 (1987), cert. denied, 484 U.S. 1066 (1988).

"To establish a claim under the [MCRA], the plaintiffs must prove that (1) their exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.' " *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. 390, 395 (1996) (citation omitted). Defendants have focused only on the third element, which requires proof that the defendants interfered with the plaintiffs' civil rights by "threats, intimidation, or coercion." See *Redgrave* v. *Boston Symphony Orchestra*, 399 Mass. 93, 98 (1987). Use of the disjunctive "or" indicates that a plaintiff need establish only one of the three alternatives. See *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgmt. Bd.*, 421 Mass. 196, 212 (1995).

Under the MCRA, a " '[t]hreat' . . . involves the intentional

---

[7]The Supreme Court has "held that [42 U.S.C. § 1983] safeguards certain rights conferred by federal statutes. *Maine* v. *Thiboutot*, 448 U.S. 1 (1980). In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of a federal *law*. *Golden State Transit Corp.* v. *Los Angeles*, 493 U.S. 103, 106 (1989)." *Blessing* v. *Freestone*, 520 U.S. 329, 340 (1997). Compare and contrast *Serreze* v. *YWCA of Western Mass., Inc.*, 30 Mass. App. Ct. 639, 645 (1991).

exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. . . . [C]oercion . . . [is] 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.' " *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. 467, 474 (citations omitted), cert. denied, 513 U.S. 868 (1994). There must also be evidence of "actual or potential physical confrontations involving a threat of harm," *id.* at 473 n.8, though the confrontation may involve third persons and the threat of harm need not be directed at the plaintiff. See *Redgrave* v. *Boston Symphony Orchestra*, 399 Mass. at 100-101 (potential physical harm to audience and orchestra members by third persons protesting plaintiff's political views is a confrontation within the MCRA).[8] A plaintiff is not required to prove a specific intent to threaten, intimidate, or coerce for the purpose of interfering with a secured right. *Id.* at 99-100.

Daume and DeChristofaro repeatedly told the plaintiffs and their attorney that the plaintiffs would be arrested if they did not vacate the property. That the defendants saw fit to express in a business-like tone their intent to have others physically engage the plaintiffs does not alter the nature of their conduct. They forewarned of a confrontation with police if the plaintiffs did not do as they suggested. While the plaintiffs may not have felt threatened or intimidated, they were concerned enough to discuss events promptly with their father and their attorney and were assured that they had a right to occupy the property, so they stood ground. Evidence of "threats, intimidation, or coercion" is to be measured by an objective standard, not the state of mind of the person threatened. *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. at 474-475. Daume's and DeChristofaro's statements could reasonably be viewed as threats within the meaning of the MCRA.

After their threats proved ineffective, though not for want of effort, the defendants pressed the Nantucket police, fully expecting that the plaintiffs would be arrested if the police saw them at the property. The arrests and detention of the plaintiffs by police were intrinsically coercive and, thus, sufficient to meet

---

[8]But see *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. at 396 n.11, where the Court "assumed without deciding the point that coercion which does not involve physical force might violate" the MCRA.

the plaintiffs' burden on that prong. See *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 823 (1985) (private security guard's order to a candidate for public office to stop distributing his political handbills at the common area of a private shopping center, which he was doing in a reasonable and unobtrusive manner, was intimidation or coercion within the meaning of the MCRA); *Reproductive Rights Network* v. *President of the Univ. of Mass.*, 45 Mass. App. Ct. 495, 508 (1998) (university's use of campus police officers to prohibit, under threat of arrest for trespass, student access to a campus building for the purpose of engaging in protected political activity, was "threats, intimidation, or coercion" under the MCRA). Although the defendants themselves did not arrest the plaintiffs or place the telephone call that precipitated the actual arrests, the arrests for trespassing were made at their direction, without which there likely would have been no such arrests. In these circumstances, liability attached under the principle of joint venture. See *Bell* v. *Mazza*, 394 Mass. 176, 184 (1985).

The defendants contend that there can be no liability under the MCRA because the arrests were a direct violation of the plaintiffs' rights. See *Longval* v. *Commissioner of Correction*, 404 Mass. 325, 333 (1989), where the court affirmed the requirement under the MCRA that proof of "threats, intimidation, or coercion" be in addition to the interference with the exercise or enjoyment of secured rights, saying "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." See *Planned Parenthood League of Mass., Inc.* v. *Blake*, 417 Mass. at 473.

Here, the defendants attempted to interfere with the plaintiffs' right to a summary process hearing by threatening them with arrest and then bringing about their arrests. The threats and coercion were not a direct violation of the right to a summary process hearing, but the means by which the defendants interfered with its enjoyment. The arrests were motivated, inferentially, by the defendants' desire to remove the plaintiffs from the property without having to observe their right to summary process. As more than a direct violation was involved, the requirements of the MCRA were met. See *Longval*, 404 Mass. at 333.

The defendants next contend that they did not violate the MCRA because their request for police involvement was no more than a petition for the redress of a grievance. See *Bell* v.

*Mazza*, 394 Mass. at 183 ("allegations which merely indicate that a defendant petitioned for the redress of grievances, absent extraordinary circumstances, are not sufficient to state a claim under" the MCRA). The evidence, however, warrants a finding that the defendants, preferring to avoid the inconvenience of summary process, enlisted the unwitting aid of the police by giving them false information to remove the plaintiffs expediently.

(ii) *Respondeat superior.* The bank argues that the MCRA does not impose liability on private employers based on a theory of respondeat superior. It concedes that an employer may be held liable for a civil rights violation by an employee, but only if it is shown that the employee acted in accordance with the employer's policy or custom. The argument presents a question not addressed previously either by the Supreme Judicial Court or by this court.

The defendants rely upon *Lyons* v. *National Car Rental Sys., Inc.*, 30 F.3d 240, 245-247 (1st Cir. 1994), a case which predicted that we would not hold a private employer vicariously liable under the MCRA for civil rights violations committed by an employee. The Court of Appeals concluded that the Legislature intended to exclude vicarious liability under the MCRA because it modeled the statute after 42 U.S.C. § 1983 and presumably was aware that a year earlier, in *Monell* v. *Department of Social Servs. of N.Y.*, 436 U.S. 658, 694 (1978), the Supreme Court had construed § 1983 as excluding vicarious liability.[9] The Court of Appeals in *Lyons* reasoned that the Supreme Judicial Court had held in *Batchelder* v. *Allied Stores Corp.*, 393 Mass. at 823, that the MCRA is "coextensive with 42 U.S.C. § 1983 . . . except that the Federal statute requires State action whereas its State counterpart does not," and that the Supreme Judicial Court had looked in *Duarte* v. *Healy*, 405 Mass. 43, 47 (1989), to Federal decisions in § 1983 cases for guidance in determining whether doctrines applicable under

---

[9]In *Monell*, the Supreme Court reexamined its holding in *Monroe* v. *Pape*, 365 U.S. 167 (1961), which conferred complete immunity upon municipalities under § 1983. After reviewing the legislative history of that statute, the Court concluded that "Congress *did* intend municipalities . . . to be included among those persons to whom § 1983 applies." 436 U.S. at 690. Issues of federalism led Congress to conclude, however, that it had no authority to hold a municipality vicariously liable under § 1983, but that it could hold municipalities liable when their agents acted "pursuant to official municipal policy of some nature." *Id.* at 691. See *Smith* v. *Boston*, 413 Mass. 607, 611 n.8 (1992).

§ 1983 also apply under the MCRA. 30 F.3d at 246. See *Batchelder* v. *Allied Stores Corp., supra* at 821-822.

"Though we always treat their decisions with deference, we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of Federal law." *Commonwealth* v. *Montanez,* 388 Mass. 603, 604 (1983). To this we add that the Supreme Judicial Court has said that "[w]e have had no occasion to consider whether it is appropriate under [the MCRA] to adopt all of the current Supreme Court precedent under § 1983." *Duarte* v. *Healy,* 405 Mass. at 47. Further, issues of federalism which led Congress and the Supreme Court to reject vicarious liability under § 1983 do not bear on the MCRA, as our Legislature has authority to impose liability on municipalities for the tortious acts of municipal agents. See *Bolster* v. *Lawrence,* 225 Mass. 387, 388-389 (1917); *Dinsky* v. *Framingham,* 386 Mass. 801, 804 (1982) (enactment of G. L. c. 258 abrogated governmental tort immunity). See also G. L. c. 151B, §§ 1(1), 1(5), and 4.

Our "primary function in interpreting any statute is to ascertain the 'intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced.' " *Deas* v. *Dempsey,* 403 Mass. 468, 470 (1988), quoting from *Glasser* v. *Director of the Div. of Employment Security,* 393 Mass. 574, 577 (1984). The legislative history of the MCRA indicates that it was enacted in response "to a need for civil rights protection under State law. Deprivations of secured rights by private individuals using violence or threats of violence were prevalent at the time . . . [and] . . . [a]ggrieved parties often could not succeed under 42 U.S.C. § 1983 . . . because the Federal statute requires 'State action.' . . . [The MCRA] encompassed private action where otherwise 'State action' would be required." *Batchelder* v. *Allied Stores Corp.,* 393 Mass. at 821.

The MCRA forbids "any person or persons" from interfering by threats, intimidation, or coercion with another's enjoyment of his or her civil rights. G. L. c. 12, § 11H. The Legislature has directed that "[i]n construing statutes . . . unless a contrary intention *clearly* appears . . . [the word] '[p]erson' . . . *shall* include corporations, societies, associations and partnerships" (emphasis added). G. L. c. 4, § 7, Twenty-third. See *Commonwealth* v. *ELM Med. Labs., Inc.,* 33 Mass. App. Ct. 71, 77

(1992).[10] There is nothing in the MCRA to indicate clearly that the Legislature did not intend the term "person" to take on the statutory definition appearing in G. L. c. 4, § 7, Twenty-third. The bank, a corporation, is a "person," as that word is used in the MCRA.

A corporation is a creature of the law, a "separate and distinct legal entity . . . [that] can only act through its agents." *Sunrise Properties, Inc.* v. *Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 66 (1997). Its liability is "necessarily vicarious." *Commonwealth* v. *L.A.L. Corp.,* 400 Mass. 737, 743 (1987). That corporations may be vicariously liable for the acts of their agents is axiomatic. Indeed, a corporation may be held vicariously liable for the crimes of its agents acting on its behalf and in the scope of their employment. See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 256-258 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972). It also "may be held vicariously liable for the intentional tort of an agent . . . committed within the scope of employment." *Worcester Ins. Co.* v. *Fells Acres Day School, Inc.*, 408 Mass. 393, 404 (1990). A corporation may be held vicariously liable under G. L. c. 93A for the conduct of an agent within the scope of employment "if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer." *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 859 (1986) (citations omitted). In holding that a corporation may be vicariously liable under G. L. c. 151B, § 4, the State's anti-discrimination law, for a supervisory employee's sexual harassment of a subordinate, the Supreme Judicial Court declined to follow the more restrictive Federal precedent under the cognate provisions of Title VII of the Civil Rights Act of 1964, requiring proof of corporate awareness, but instead concluded that § 4 was to be afforded a liberal construction to accomplish its statutory purposes. *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 163-168 (1987).

---

[10] "[I]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof." *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962). See *Fran's Lunch, Inc.* v. *Alcoholic Bevs. Control Commn.*, 45 Mass. App. Ct. 663, 664 (1998).

The MCRA, "like other civil rights statutes, is remedial. As such, it is entitled to liberal construction of its terms." *Batchelder* v. *Allied Stores Corp.*, 393 Mass. at 822. We think it doubtful that the Legislature would have intended to create a unique exception to the tort principle of respondeat superior for a statute enacted as a necessity to remedy the violation of civil rights by private persons. Such a result would significantly narrow the application of the statute by immunizing a principal for a civil rights violation committed, even as directed, by his agent, and undermine the Legislature's intent to reach private civil rights violations. Compare *Commonwealth* v. *Guilfoyle*, 402 Mass. 130, 134 (1988) (Legislature did not intend that the MCRA exclude actions against juveniles for their civil rights violations).

Our decisions have impliedly recognized that a plaintiff may state a cause of action under the MCRA against a private employer based on respondeat superior. See *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington*, 399 Mass. 771 (1987); *O'Connell* v. *Chasdi*, 400 Mass. 686 (1987); *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413 (1988). We conclude that the Legislature intended corporations to be vicariously liable under the MCRA for civil rights violations committed by their agents acting in the scope of their employment.

The evidence warranted findings that DeChristofaro was an agent of the bank and acted in the scope of his employment. His involvement occurred in the course of preparing the property for sale, which included the removal of occupants. He was also furthering the bank's interests by pursuing a quick turnover for a substantial gain. See *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. at 859. Daume and Lee, though independent contractors, acted at the direction and under the control of DeChristofaro, and as such were agents of the bank for purposes of its vicarious liability. See *Corsetti* v. *Stone Co.*, 396 Mass. 1, 9-10 (1985).

b. *The false imprisonment claim.* The defendants also challenge the denial of their motion for judgment n.o.v. as to the claim for false imprisonment. They argue that they did not participate in the arrest and that the evidence did not establish a conspiracy to do so.[11]

A person may be liable for false imprisonment not only when

---

[11]The defendants argue in a footnote that the judge excluded evidence that rebutted the plaintiffs' argument that the Nantucket police acted solely upon

the person's own acts directly impose a restraint upon the liberty of another but also when that person, by providing false information, causes such restraint to be imposed. *Karjavainen* v. *Buswell*, 289 Mass. 419, 427 (1935) (questioned on other grounds by *Mezullo* v. *Maletz*, 331 Mass. 233, 239-240 [1954]). Restatement (Second) of Torts § 37 (1965) ("If an act is done with the intent to confine another, and such act is the legal cause of confinement to another, it is immaterial whether the act directly or indirectly causes the confinement"). Compare *Mc-Dermott* v. *W. T. Grant Co.*, 313 Mass. 736, 738 (1943). The defendants, by requesting that the plaintiffs be arrested for trespassing if seen on the property, knowing there was no lawful basis for the request, were liable for their consequent confinement. See *Kruvelitz* v. *Eastern R.R. Co.*, 143 Mass. 228, 232 (1887). The plaintiffs were not required to prove a conspiracy.

c. *Res judicata.* The defendants argue that the plaintiffs are barred by res judicata from relitigating claims involving their wrongful eviction or removal from the property because their father litigated the same claims and issues in a prior action with the bank and that they were in privity with him as to those matters.

The term "res judicata" includes both claim preclusion and issue preclusion. *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action. . . . The doctrine is a ramification of the policy considerations that underlie the rule against splitting a cause of action, and is 'based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.' " *Id.* at 23-24 (citation omitted).

The doctrine of issue preclusion "prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies." *Id.* at 23 n.2. It requires proof that "(1)

---

the defendants' direction. The defendants' treatment of this issue does not rise to the level of acceptable appellate argument within the meaning of Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 664-665 (1997). As such, we do not address it on appeal.

there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication is identical to the issue in the current adjudication. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment." *Commissioner of the Dept. of Employment & Training* v. *Dugan,* 428 Mass. 138, 142 (1998) (citation omitted). Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action, *Fidelity Mgmt. & Research Co.* v. *Ostrander,* 40 Mass. App. Ct. 195, 199 (1996), and thus we look to the record to see what was actually litigated. See *Gleason* v. *Hardware Mut. Cas. Co.,* 324 Mass. 695, 699 (1949). As the defendants are the parties asserting both claim and issue preclusion, they bear the burden of proof on the elements. See *Fabrizio* v. *U. S. Susuki Motor Corp.,* 362 Mass. 873, 873-874 (1972); *McSorley* v. *Hancock,* 11 Mass. App. Ct. 563, 565 (1981).

The prior action was brought by the bank against Mr. Sarvis in December, 1991, to recover the deficiency due on the promissory note secured by the mortgage on the property. Mr. Sarvis asserted a multiple count counterclaim against the bank, including a claim (count III) that the bank "wrongfully induced the police to come upon said property and remove members of [his] family who were lawfully residing therein . . . without due process of law." He sought damages only for himself. The plaintiffs were not parties to that action. The bank moved for summary judgment, and on June 4, 1992, a Superior Court judge (not the judge who presided over the trial presently on review) dismissed count III. The judge reasoned that since the bank complied with the notice and publication requirements of G. L. c. 244, § 14, relating to foreclosure sales, Mr. Sarvis's rights in the property were foreclosed, and count III of his counterclaim, which the judge termed "an action for wrongful eviction," necessarily fails.[12] Mr. Sarvis did not appeal.

We agree that plaintiffs probably stood in privity with their father as to his interest in the property. See *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 218 (1909) ("One comprehensive definition of privies is such

---

[12]In the absence of a possessory interest in land, an action in tort for wrongful eviction cannot be maintained. See *Sottile* v. *Kaufman,* 242 Mass. 234, 236 (1922); *Mescall* v. *Somerset Sav. Bank,* 305 Mass. 575, 578 (1940).

persons as are 'privies in estate' ''). Their civil rights and false imprisonment claims, however, do not depend upon a right to possession of the property. The plaintiffs have claimed a statutory right to be evicted by summary process, a process which presupposes the absence of a possessory right. See *Wayne Inv. Corp.* v. *Abbott*, 350 Mass. 775, 775 (1966). Further, it is not disputed that the bank eventually brought summary proceedings against Mr. Sarvis in October, 1991.

There was no privity between the plaintiffs and their father as to their civil rights and false imprisonment claims. Such claims were independent of any claim Mr. Sarvis may have had against the defendants. "[I]t creates no privity between two parties that, as litigants in two different suits, they happen to be interested in proving or disproving the same facts." *Sturbridge* v. *Franklin*, 160 Mass. 149, 151 (1893). The record also does not show "sufficient legal identity" between Mr. Sarvis and the plaintiffs, who were not parties in the prior action, as would establish his representation of their interests on the present claims for purposes of res judicata. *Rudow* v. *Fogel*, 376 Mass. 587, 589 (1978). *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246, 249-250 (1980). Both plaintiffs had attained age eighteen by the time the prior action was filed, so their father could not have brought a counterclaim on their behalf as their next friend. See Mass.R. Civ.P. 17(b), 365 Mass. 763 (1974).

The defendants have failed to show that the plaintiffs' claims were actually litigated in the prior action. "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Massachusetts Property Ins. Underwriting Assn.* v. *Norrington*, 395 Mass. 751, 754 (1985), quoting from *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 327 n.7 (1979). We conclude that principles of res judicata do not bar plaintiffs from litigating their claims.

2. *Jury instructions.* The defendants argue the judge committed reversible error in several aspects of the jury instructions. They challenge the judge's instructions on the separate issues of conspiracy and superseding causes. In addition, they argue the judge committed reversible error by emphasizing "abandonment" as a "key" issue in the case.

The trial judge maintains discretion in charging the jury, and a charge is to be read as a whole in determining whether the jury were properly instructed. See *O'Connor* v. *Raymark Indus.*,

*Inc.*, 401 Mass. 586, 592 (1988). In light of the judge's comprehensive and correct charge on causation, there was no prejudice in the omission of instructions on intervening and superseding causes. Whether someone other than one of the defendants placed the telephone call that actually resulted in the arrests of the plaintiffs is immaterial in view of the defendants' directive to the police that the plaintiffs should be arrested if seen on the property. The police did not arrest the plaintiffs because someone called. The police arrested the plaintiffs because they were directed by the defendants to do so if they saw plaintiffs on the property. They arrested the plaintiffs when they saw them on the property in response to a call. That call was not a superseding cause. If the judge failed to give an instruction that he had promised to give, as defendants contend but which we do not discern from the record, there was no reminder of any such promise by way of objection or otherwise, at the conclusion of the judge's instructions, when the defendants had the opportunity to do so.

There was no error in the judge's refusal to instruct that false imprisonment could be established by proof that the defendants conspired with the police, where there was no evidence to support that theory. As we stated, *infra*, the plaintiffs were not required to prove that the defendants conspired to cause the plaintiffs' arrest. The judge correctly instructed the jury in accordance with the alternative requested by the defendants, that the plaintiffs must prove the defendants "acted in a way purposefully calculated to bring about incarceration."

The defendants now claim that the judge's failure also to instruct on conspiracy violated a promise to so charge. We find no express promise to charge on conspiracy, and the defendants never reminded the judge of any promise to so charge, having had the opportunity to do so after the judge instructed the jury and before they retired to deliberate.

We also reject the defendants' argument that the judge erred by remarking to the jury in his instructions that the question of plaintiffs' "abandonment" of the property was "*the* key" issue in the trial. Defendants objected to the judge's use of the word "the," and he obliged by telling the jury that it was "*a* key" issue. There was no objection to the charge as corrected. The issue of abandonment was vigorously presented by the defendants. The judge's instructions as a whole were correct, and we conclude there was no error where the words in question were

but a small portion of complex jury instructions that spanned two days.

3. *Remittitur.* The defendants also appeal from the judge's denial of their motion for a new trial on the issue of damages. They contend that they were entitled to a remittitur because the jury award of $45,000 to each plaintiff was excessive. They contend that because the plaintiffs suffered only "minor" inconvenience, emotional upset, and embarrassment, the award was excessive.

The denial of a motion based on excessive damages is discretionary. See *Freeman* v. *Wood*, 379 Mass. 777, 781 n.9 (1980). See also *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 824-825 (1997). "The field of discretion of the trial judge in these matters is very broad. Only in rare instances can it be ruled that there has been an abuse of discretion amounting to an error of law." *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 665 (1997). "We do not substitute our judgment for that of the trial judge who saw the witnesses" and was better able to assess the impact of the events in question upon them. *Blake* v. *Commissioner of Correction*, 403 Mass. 764, 771 (1989). In the circumstances, we believe the judge reasonably concluded that the verdict was reached honestly and fairly. *Solimene* v. *B. Grauel & Co.*, 399 Mass. 790, 803-804 (1987).

The orders denying the defendants' motion for judgment n.o.v. and motion for a new trial are affirmed. The judgments are affirmed.

*So ordered.*

KASS, J. (concurring). This opportunistic private action by two individuals who were well aware that they no longer had a right to occupy the premises they had hunkered down in trivializes the noble purpose of the Massachusetts Civil Rights Act. See *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 821 (1985). As the opinion of the court in the instant case points out, however, the defendants have not raised the issue whether the MCRA applies to a private quarrel of the sort involved. I make these concurring comments to emphasize that not more should be read into that particular aspect of the court's opinion than is in it.