Joseph CARVALHO, Plaintiff,

v.

TOWN OF WESTPORT, and Marjorie Holden, David Dion, and Dr. James Kirkaldy, individually and in their capacity as Selectmen for the Town of Westport, and Michael Healy, Chief of Police for the Town of Westport, Defendants.

No. CIV. A. 00–11921–WGY.

United States District Court, D. Massachusetts.

April 9, 2001.

---

Patrick T. Matthews, Fall River, MA, for Plaintiff.

Michael J. Akerson, Edward P. Reardon, P.C., Worcester, MA, Joyce F. Frank, David C. Jenkins, Kopelman and Paige, P.C., Boston, MA, Austin M. Joyce, Edward P. Joyce, Edward P. Reardon, P.C., Worcester, MA, Darren R. Klein, Kopelman & Paige, P.C., Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. Introduction

The plaintiff, Joseph Carvalho ("Carvalho"), commenced this suit against the Town of Westport (the "Town"), Majorie Holden, David Dion, and Dr. James Kirkaldy individually and in their capacities as Selectmen for the Town (collectively "Selectmen"), and Michael Healy ("Healy"), Chief of Police for the Town (the defendants are collectively "Westport"), alleging in his amended complaint: violation of Massachusetts General Laws ch. 41, § 111F (Count I); violation of the state and federal constitutions as prohibited by Massachusetts General Laws ch. 12, § 11I and 42 U.S.C. § 1983 (Count II); age discrimination under both state and federal law (Count III); defamation (Count IV); and intentional infliction of emotional distress (Count V). Am. Compl. ¶¶ 30–44.

Westport seeks to dismiss portions of the amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the following grounds: (1) Carvalho cannot state a claim for relief for a violation of due process because he does not have an absolute entitlement to benefits under Massachusetts General Laws ch. 41, § 111F; (2) the amended complaint fails to state a First Amendment claim; (3) Carvalho cannot prevail on either his state or federal age discrimination claims because he has not exhausted his administrative remedies; (4) this Court should dismiss the state law claims because there is no surviving federal claim; (5) Carvalho does not state a claim for relief under the Massachusetts Civil Rights Act (the "Act"); (6) Carvalho cannot state a claim for relief under Massachusetts General Laws ch. 41, § 111F because he does not have an injury as required by that statute; (7) the Town has immunity from the defamation claim because it is an intentional tort; (8) Carvalho has not pled the defamation claim with sufficient particularity; (9) the Town and the Selectmen have immunity from the intentional infliction of emotional distress claim because it is an intentional tort and because it arises out of the employment relationship; and (10) Carvalho's allegations of intentional infliction of emotional

distress against Chief Healy do not state a claim because Healy's conduct was not sufficiently outrageous. Defs.' Mem. at 3–11.

On December 14, 2000, this Court took Westport's motion to dismiss the amended complaint under advisement.

## II. Factual Background

Carvalho originally filed his complaint in the Massachusetts Superior Court sitting in and for the County of Bristol on September 11, 2000. Westport filed a notice of removal to this Court on September 19, 2000. Subsequent to Westport's motion to dismiss, Carvalho filed an amended complaint on October 20, 2000. Westport's present motion to dismiss refers to this amended complaint. For purposes of a motion to dismiss, the allegations in the amended complaint are taken as true.

Carvalho began his employment with the Town as a police officer in April 1972. Am. Compl. ¶ 6. Carvalho was promoted to Lieutenant around 1990 and served in this capacity until he became ill in December 1999. Id. ¶ 7. As a senior officer, Carvalho was responsible for personnel supervision and assignments. Id. ¶ 12.

Trouble began to brew for Carvalho around March 1997, when the Town hired Healy as its new police chief. Id. ¶ 8. Carvalho alleges that Healy "embarked on a deliberate course of conduct to replace, remove or demote certain long term employees of the Department based on age and longevity and specifically targeted [Carvalho] as an employee that should be terminated," and that the Town tacitly adopted Healy's policies. Id. ¶¶ 9–10.

Carvalho alleges that Healy committed several specific acts that were designed to harass and undermine his authority: (1) Healy designated a junior employee as "officer in charge" and restricted Carvalho's supervisory tasks and responsibilities, id. ¶ 13; (2) Healy limited and controlled Carvalho's meal break, id. ¶ 14; (3) Healy limited the days on which Carvalho could take sick leave, id. ¶ 15; (4) Healy moved Carvalho's desk to the front lobby, id. ¶ 16; and (5) Healy contacted various citizens to unduly pressure them into testifying against Carvalho in a disciplinary hearing, id. ¶ 17.

Carvalho also alleges that on November 26, 1999 Healy threatened Carvalho with disciplinary action if he discussed his involvement in a pending civil case in which he was to testify. Id. ¶ 19; see also Pl.'s Mem. Supp. Prelim. Inj. Ex. 1 ("Written Reprimand"); Pl.'s Surreply Ex. 2 ("Disciplinary Hr'g Mem.").[1] Moreover, on December 13, 1999, Healy notified Carvalho that he was being demoted to the rank of Sergeant for failing to be a "confidant with regards to department activity." Am. Compl. ¶ 20.

Carvalho alleges that, as a result of these actions, he has suffered emotional and physical trauma and has sought treatment from a psychologist. Id. ¶ 18. On the advice of his physicians and his psychologist, Carvalho went on sick leave due to "work related stress directly related to the aforementioned acts, policies and procedures" on December 6, 1999. Id. ¶ 21.

On that date, Carvalho notified the Town of his disability, and one week later, he applied for incapacitation benefits pursuant to Massachusetts General Laws ch. 41, § 111F. Id. ¶ 22. The Town refused to consider Carvalho's application for benefits until he submitted to an Independent Med-

---

1. This Court treats the Written Reprimand and the Disciplinary Hearing Memorandum as part of the pleadings because they were supplied by Carvalho, are referenced in the pleadings, and are integral to his section 1983 claim. See Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir.1993).

ical Examination by the Town's doctor. *Id.* ¶ 23. Despite repeated efforts by Carvalho to inform the Town that he was willing to submit to such an examination, he did not receive one until around May 2000. Dr. Seymour, a psychologist, performed the examination. *Id.* ¶¶ 24–26.

Dr. Seymour issued his opinion on September 22, 2000. *Id.* ¶ 27. On September 29, 2000—the day that Carvalho had exhausted all of his sick and vacation time—the Board of Selectmen conducted a hearing to make a determination as to Carvalho's entitlement to incapacitation benefits under Massachusetts General Laws ch. 41, § 111F. *Id.* ¶ 28. The Board voted 2–1 to deny Carvalho's claim to benefits, despite medical evidence to the contrary. *Id.* ¶ 29.

### III. Analysis

#### A. Standard of Review

Dismissal is appropriate "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 [1957]). In making this determination, the Court should "take the allegations in the complaint as true and grant all reasonable inferences in favor of the plaintiff." *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 988 (1st Cir.1992) (citing *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13 [1st Cir.1989]).

Nonetheless, the standard for dismissal is not without any bite. In taking the plaintiff's allegations as true, the Court may "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." *Dartmouth Review*, 889 F.2d at 16 (internal quotation marks omitted) (quoting *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 [1st Cir.1987]). Moreover, the plaintiff must set forth in his complaint "'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* at 16 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 [1st Cir.1988]).

#### B. Constitutional Claims

##### 1. Section 1983

###### a. First Amendment

■ A public employee has a First Amendment right to speak about matters of public concern as long as such speech does not interfere unduly with the government's interest as an employer. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Thus, in order to state a First Amendment claim, an employee must allege that she "was speaking as a citizen upon matters of public concern," as opposed to merely "as an employee upon matters only of personal interest." *O'Connor v. Steeves*, 994 F.2d 905, 912 (1st Cir.1993) (internal quotation marks omitted) (quoting *Connick*, 461 U.S. at 147, 103 S.Ct. 1684).

■ Westport argues that Carvalho has failed to allege that he made public statements on a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. With this standard in mind, the Court concludes that Carvalho has sufficiently alleged that he spoke on a matter of public concern. Carvalho avers that Healy retaliated against him because of his statements both inside and outside court regarding the allegedly unlawful and inappropriate actions of officers that resulted in the arrest of an attorney, and the resulting civil suit brought by the attorney

against the Town, the Selectmen, and the officers involved in the arrest. Am. Compl. ¶¶ 19–20; Written Reprimand. Carvalho thus alleges that Healy retaliated against him for public statements made about a purportedly unlawful arrest. Such comments are a matter of public concern. *Compare Padilla–Garcia v. Guillermo Rodriguez,* 212 F.3d 69, 79 (1st Cir.2000) (speech on matter of public concern), *with Tang v. R.I., Dep't of Elderly Affairs,* 163 F.3d 7, 11–13 (1st Cir.1998) (speech as to personal interests).

Westport also argues that the restrictions placed on Carvalho's speech were "a necessary component of the public employer promoting the efficient performance of public service." Defs.' Reply at 2. Although in considering a public employee's claim under the First Amendment, the Court must balance the employee's and the public's interest in the speech against the government's interest as an employer, *O'Connor,* 994 F.2d at 912, determination of this factual issue is inappropriate at the motion to dismiss stage.

The Town and the Selectmen (in their individual and official capacities) argue in the alternative that Carvalho's First Amendment claim should be dismissed against them because the claim arises only out of Healy's Written Reprimand.[2] Defs.' Reply at 3. Carvalho alleges, however, that the Selectmen and the Town adopted Healy's policy of retaliation and harassment. Am. Compl. ¶¶ 10, 35. Indeed, it can be inferred from the pleadings that the Selectmen actively participated in Healy's retaliatory demotion of Carvalho because of their participation in the subsequent disciplinary hearing. *Id.* ¶ 20; Disciplinary Hr'g Mem. Moreover, the involvement of

the Selectmen in Healy's retaliatory actions supports a claim against the Town because of their policy control of the police department. Mass. Gen. Laws ch. 41, §§ 97, 97A ("weak" and "strong" police chief statutes, respectively); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Combined, these allegations are sufficient for Carvalho's First Amendment claims against the Town and the Selectmen to survive a motion to dismiss. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (holding that there is no heightened pleading standard in civil rights cases alleging municipal liability).

For the foregoing reasons, Carvalho has sufficiently alleged, for purposes of a motion to dismiss, that each defendant violated his First Amendment rights.

**b. Procedural Due Process**

For the same reasons relied upon at the motion hearing on December 14, 2000, this Court concludes that Carvalho does not state a claim under section 1983 for a due process violation, because he has no entitlement to benefits under Massachusetts General Laws ch. 41, § 111F.

**c. Supplemental Jurisdiction**

Because Carvalho states a claim for relief under section 1983, this Court has supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367.

**2. The Massachusetts Civil Rights Act**

■ To establish a claim under the Act,[3] Carvalho must allege that: "(1) his exer-

---

2. Although the Town and the Selectmen first raised this argument in their reply brief, the Court nonetheless considers it because Carvalho had a sufficient opportunity to respond to it.

3. The Massachusetts Civil Rights Act provides, in relevant part:

cise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion.'" *Bally v. Northeastern Univ.*, 403 Mass. 713, 717, 532 N.E.2d 49 (1989) (quoting Mass. Gen. Laws ch. 12, § 11I). Westport argues that Carvalho has not sufficiently alleged any of these elements. Defs.' Mem. at 7. Review of the amended complaint, however, reveals that he has.

Carvalho has adequately alleged the first two requirements under the Act. He has asserted that Westport violated his free speech rights under both the state and federal Constitutions. Am. Compl. ¶ 36. Moreover, Carvalho has alleged a violation of his due process rights under both the state and federal constitutions based on his deprivation of employment in contravention of his agreement with the Town of Westport, *id.* ¶¶ 34–35, and Westport does not challenge this allegation in its motion to dismiss the amended complaint. These allegations are sufficient to meet the first two requirements of the Act.

The final requirement under the Act raises a more difficult question for the Court because of shifting Massachusetts law interpreting the scope of the "threats, intimidation, or coercion" requirement. It is not clear whether economic coercion meets the requirement, or whether Massachusetts law requires a physical confrontation.

■ Carvalho alleges that Healy retaliated against him because of his public statements regarding a pending lawsuit against Westport. *Id.* ¶¶ 19–20. Healy allegedly threatened Carvalho with disciplinary action if he made further statements on the matter. *See* Written Reprimand. Moreover, this threat of disciplinary action was closely followed by a demotion. Am. Compl. ¶ 20. In considering a motion to dismiss, this Court can infer that such actions were in contravention of Carvalho's employment agreement with the Town. *See* Mass. Gen. Laws ch. 41, §§ 97, 97A, 133 (explaining that police officers are not at-will employees). The question at hand is whether these threats of disciplinary action and Carvalho's subsequent demotion in retaliation for his public statements constitute "threats, intimidation, or coercion."

The Supreme Judicial Court has defined the words "threats, intimidation, or coercion" as follows:

> "Threat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct.... ["Coercion" means] "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."

*Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474, 631 N.E.2d 985 (1994) (citations omitted) (quoting *Webster's New International Dictionary*

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with ... as described in section 11H [by any person, whether or not acting under color of law,

by threats, intimidation, or coercion], may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief ....

Mass. Gen. Laws ch. 12, § 11I.

519 [2d ed.1959] ); *accord Sarvis v. Boston Safe Deposit & Trust Co.,* 47 Mass.App.Ct. 86, 91–92, 711 N.E.2d 911 (1999).

Despite this rather broad definition of "threats, intimidation, or coercion," the Supreme Judicial Court has suggested that a showing of an "actual or potential physical confrontation accompanied by a threat of harm" is a required element of a claim under the Act. *Blake,* 417 Mass. at 474 & n. 8, 631 N.E.2d 985; *see also Sarvis,* 47 Mass.App.Ct. at 92, 711 N.E.2d 911. In other cases, however, the Supreme Judicial Court has relied on *Redgrave v. Boston Symphony Orchestra, Inc.,* 399 Mass. 93, 95, 502 N.E.2d 1375 (1987), in noting that threatening a breach of contract, even in the absence of a physical confrontation, constitutes sufficient "threats, intimidation, or coercion" to state a claim under the Act. *E.g., Willitts v. Roman Catholic Archbishop,* 411 Mass. 202, 210, 581 N.E.2d 475 (1991) ("[R]elief under the Act may be granted where the 'threat, intimidation or coercion' involves either a physical confrontation accompanied by a threat of harm or the loss of a contract right." [citations omitted] ); *Bally,* 403 Mass. at 719, 532 N.E.2d 49.

The validity of this contract exception, however, is questionable in light of the Supreme Judicial Court's recent recharacterization of *Redgrave* as involving not a contract dispute, but rather a physical confrontation accompanied by threats of harm. *Blake,* 417 Mass. at 473 n. 8, 631 N.E.2d 985 (characterizing *Redgrave* as involving "potential threats to the physical safety of the audience and symphony players"); *see also Sarvis,* 47 Mass.App.Ct. at 92, 711 N.E.2d 911 (same). This recharacterization is a departure from the Supreme Judicial Court's initial characterization of *Redgrave* as involving conduct other than a physical confrontation accompanied by threats of harm. *Bally,* 403 Mass. at 719,

532 N.E.2d 49 (explaining that although *Redgrave* did not involve a physical confrontation accompanied by threats of harm, it did involve the loss of a contract right).

To further complicate matters, however, post-dating these conflicting characterizations of *Redgrave,* the Supreme Judicial Court has issued opinions in which it states that it has not decided whether economic coercion is sufficient to state a claim under the Act. *Swanset Dev. Corp. v. City of Taunton,* 423 Mass. 390, 396, 668 N.E.2d 333 n. 11 (1996) (assuming without deciding that coercion that does not involve physical force could state a claim under the Act [citing *Freeman v. Planning Bd.,* 419 Mass. 548, 566 n. 18, 646 N.E.2d 139 (1995) ] ); *see also Sarvis,* 47 Mass.App.Ct. at 92, 711 N.E.2d 911. Moreover, the Supreme Judicial Court's most recent consideration of whether action constituted "threats, intimidation, or coercion," merely mentioned lack of physical force as one reason why the conduct at issue was inadequate to state a claim without explicitly stating that this failure was sufficient by itself to warrant dismissal. *Brunelle v. Lynn Pub. Sch.,* 433 Mass. 179, 183–84, 740 N.E.2d 625 (2001).

What is the Court to make of these cases? Their conflicting analyses have created quite a bit of confusion in this district. *Compare LaManque v. Mass. Dep't of Employment & Training,* 3 F.Supp.2d 83, 93 & n. 9 (D.Mass.1998) (Lindsay, J.) (requiring showing of physical confrontation), *and Cignetti v. Healy,* 967 F.Supp. 10, 17 (D.Mass.1997) (Lasker, J.) (same), *with Acciavatti v. Prof'l Servs. Group, Inc.,* 982 F.Supp. 69, 78–79 (D.Mass.1997) (Tauro, J.) (not requiring showing of physical confrontation), *and Broderick v. Roache,* 803 F.Supp. 480, 486 (1992) (Mazzone, J.) ("Until and unless *Redgrave* is more explicitly disavowed, this

court must assume that it remains good law.").

Recently, Justice Ralph Gants, a justice of the Massachusetts Superior Court, closely examined these cases and concluded that an actual or potential physical confrontation accompanied by threats of harm is an essential element of the Act and that the Act does not contain an exception for threatening a breach of contract. *Buster v. George W. Moore, Inc.*, Civ. A. No. 97–637–F, 2000 WL 576363, at \*19 (Mass.Super. April 28, 2000). After extensive analysis of the Supreme Judicial Court's holding in *Redgrave*, Justice Gants reasoned that *Redgrave* has no precedential value to the question at hand because the Supreme Judicial Court did not there address the issue of what conduct constitutes "threats, intimidation, or coercion," but rather considered only the two questions certified to it by the First Circuit. *Id.* at \*21. Justice Gants concluded that "[t]hose Supreme Judicial Court cases which declare that a breach of contract may be sufficient to constitute this forbidden behavior do so only under the mistaken belief that the Supreme Judicial Court in *Redgrave* permitted the case to go forward on this ground, when all that it truly did was answer certified questions in a case where a federal district court judge denied a pretrial motion to dismiss the claim under the Act." *Id.*

Although Justice Gants's reasoning is sound, this Court—a federal court deciding an issue of state law—cannot be so quick to characterize the Supreme Judicial Court's statements as "mistaken." The fact that the Supreme Judicial Court did not explicitly address the issue in *Redgrave* does not alter the fact that the Supreme Judicial Court stated in other cases, albeit relying on *Redgrave*, that threatening breach of contract states a claim under the Act. The Supreme Judicial Court's hints that an actual or potential physical confrontation accompanied by threats of harm is a requirement to state a claim under the Act are insufficient to foreclose the exception to this requirement established by *Redgrave*. If the Supreme Judicial Court wants such foreclosure, then it can expressly so hold, rather than leaving the question open for future consideration. Therefore, Carvalho's allegations that Healy threatened to discipline him and that Carvalho was ultimately demoted in retaliation for his public statements are—at the motion to dismiss stage—sufficient to state a claim under Massachusetts General Laws ch. 12, § 11I.[4]

## C. Age Discrimination Claims

Carvalho voluntarily withdrew Count III of the complaint, rendering the motion to dismiss moot with respect to Westport's arguments that Carvalho failed to exhaust his administrative remedies as required by Massachusetts General Laws ch. 151B and the Age Discrimination and Employment Act.

---

4. Justice Gants's suggestion that to hold otherwise would unduly expand the scope of the Act, *Buster*, 2000 WL 576363, at \*22–\*23, is inapplicable to this case. In *Buster*, Justice Gants was considering the broader question of whether economic coercion constitutes "threats, intimidation, or coercion" under the Act. Thus, *Buster* does not fit under the breach of contract exception established in *Redgrave*. *Id.* at \*23 n. 8. The instant case, however, fits neatly into the limited exception established by *Redgrave* because it involves coercion through threats of breach of contract, rather than general economic coercion in an at-will employment relationship. *Cf. Webster v. Motorola, Inc.*, 418 Mass. 425, 430, 637 N.E.2d 203 (1994) (distinguishing coercion involving at-will employment from coercion involving contract rights); *Orkiolla v. Action for Boston Cmty. Dev.*, No. 917561B, 1993 WL 818617, at \*2 & n. 3 (Mass.Super. Nov. 12, 1993) (Botsford, J.) (same).

### D.  State Law Claims

For the same reasons relied upon at the December 14, 2000 motion hearing, the Court concludes that Carvalho states a claim under Massachusetts General Laws ch. 41, § 111F.

For the same reasons relied upon at the motion hearing for dismissal of Count IV for defamation as against the Town, the Court dismisses Count IV for defamation and Count V for intentional infliction of emotional distress against the Town. The Court also dismisses Count V against the Selectmen in their official capacities, Mass. Gen. Laws. ch. 258, §§ 1, 10(c), but not in their individual capacities, *Spring v. Geriatric Auth.*, 394 Mass. 274, 286 n. 9, 475 N.E.2d 727 (1985).[5]

At the motion hearing, the Court dismissed Count IV for defamation for failure to plead with sufficient particularity the defamatory statements.  The amended complaint bears the same deficiency.  The Court now extends thirty days to Carvalho to file a motion for leave further to amend the amended complaint properly to plead Count IV.

■  What remains of Count V for intentional infliction of emotional distress states a claim.  Although, standing alone, each alleged incident is not itself outrageous conduct, the policy of harassment employed against Carvalho, in particular Westport's "affirmative steps to unduly pressure, interrogate, intimidate, and coerce [individuals] into bearing witness against [Carvalho] in a disciplinary hearing designed to embarrass and harass" Carvalho, Am. Compl. ¶ 17, is sufficiently outrageous to justify denial of the motion to dismiss.  *Johnson v. Teamsters Local 559*, 102 F.3d 21, 25 (1st Cir.1996) ("Conduct which might be acceptable when done for a legitimate reason can be extreme and outrageous if unjustifiably performed simply to inflict harm.");  *Armano v. Fed. Reserve Bank*, 468 F.Supp. 674, 676 (D.Mass.1979) (Caffrey, J.);  *Boyle v. Wenk*, 378 Mass. 592, 595, 392 N.E.2d 1053 (1979).

### IV.  Conclusion

The motion to dismiss the amended complaint [Docket No. 21] is GRANTED IN PART and DENIED IN PART. To the extent that the motion sought to dismiss Count II for failure to state a claim under section 1983, it is DENIED with respect to the First Amendment claim as to each defendant and GRANTED with respect to the due process claim for deprivation of benefits under Massachusetts General Laws ch. 41, § 111F. To the extent that the motion sought to dismiss for want of jurisdiction, the motion is DENIED. Because Carvalho has adequately stated a claim under the Massachusetts Civil Rights Act, the motion to dismiss Count II in that respect is DENIED.  Count III is voluntarily withdrawn.  With respect to the state law claims, the Court GRANTS the motion to dismiss Counts IV and V as against the Town and the Selectmen in their official capacities, but the motion is DENIED as to Count V with respect to the Selectmen in their individual capacities.  The motion to dismiss Count IV is GRANTED, but Carvalho has thirty days from the date of this order to file a motion for leave further to amend the amended complaint.

---

5.  Because the Court dismisses Count V against the Town, the Town's argument that a remedy under Massachusetts General Laws ch. 41, § 111F is exclusive of a remedy under Massachusetts General Laws ch. 258 is moot.