DANIEL TILTON, SECOND, & others *vs.* TOWN OF FRANKLIN.

Norfolk. January 16, 1987. — April 29, 1987.

Present: GREANEY, C.J. KAPLAN, & ARMSTRONG, JJ.

*Negligence,* Emotional distress, Governmental immunity, School. *Emotional Distress. Massachusetts Tort Claims Act. Wanton or Reckless Conduct. Libel and Slander.*

An allegation by the student editor of a town's high school's yearbook and his parents that, both before and after the son had been exonerated from any involvement in a fraudulent scheme to sell advertising space in the yearbook, certain members of the school's administration and staff "recklessly disseminated or permitted to be disseminated" false accusations of the student's complicity in the scheme, stated no claim for relief against the town on the theory of "reckless infliction of emotional distress" where, since the essence of reckless conduct is intentional conduct, there was no merit to the plaintiffs' contention that their theory of recovery was distinct from intentional infliction of emotional distress and hence not one of those intentional torts specifically enumerated in G. L. c. 258, § 10 (*c*), as excepted from the waiver of immunity effected by the Massachusetts Tort Claims Act. [112-113]

CIVIL ACTION commenced in the Superior Court Department on February 11, 1985.

The case was heard by *Andrew Gill Meyer, J.,* on a motion to dismiss.

*F. Joseph Gentili* for the plaintiffs.

*Ellen M. McElligott* for the defendant.

ARMSTRONG, J. The plaintiff Daniel Tilton, II (Daniel), and his parents brought this action to recover damages for their emotional distress and related costs of psychological counseling. After answering, the town filed a motion for summary judgment under Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974), which was allowed. The pleadings were not verified, however, and no depositions, answers to interrogatories, or affidavits were filed in support of the motion. Most of the essential allega-

tions of the complaint were denied in the town's answer. It is apparent from the record, which includes the briefs that the parties filed with the trial judge in support of or in opposition to the motion, that the judge in essence ruled that the plaintiffs could not recover even if all of their factual allegations were found to be true. The motion was treated, in other words, as if it were a motion under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), to dismiss the complaint for failure to state a claim on which relief could be granted. We review the judge's ruling on that basis, assuming, as we must, the truth of the allegations of the complaint. See 6 Moore's Federal Practice § 56.11[2] (2d ed. 1986); *Ercon, Inc.* v. *Chomerics, Inc.,* 16 Fed. R. Serv. 2d 1372, 1373 (Callaghan) (D. Mass. 1973); Smith & Zobel, Rules Practice § 12.16 (1974).

Daniel was a student in the Franklin high school class of 1983. In September of 1982, he was appointed editor of the school yearbook. Shortly thereafter, a student who had been graduated in the class of 1982 was discovered to be selling advertising space in the yearbook to local merchants, without authority and with larcenous intent. Daniel was suspected as an accomplice in the fraud, and in the course of the investigation he was removed as editor of the yearbook. When the investigation ended, the school concluded that Daniel had not been involved. The superintendent of schools wrote Daniel a letter to that effect, and the school reinstated him as an editor of the yearbook. Nevertheless certain members of the school's administration and staff (not named in the complaint), both before and after Daniel's exoneration, "recklessly disseminated or permitted to be disseminated" allegations of Daniel's complicity; and when the yearbook was published, it was found to contain hostile comments by yearbook staff members (students, presumably) allegedly carrying the innuendo that Daniel had been party to the fraud.[1]

---

[1] The art director wrote that one of his ambitions was to "see Dan T. bleed." The typing editor willed "to Dan T. . . . a book entitled '101 Ways to Spend \$3,000.'" The fund-raising manager listed as one of her dislikes: "D.T."

The Tiltons are caught on the horns of a dilemma. If they establish that members of the school staff committed negligent infliction of emotional distress[2], they lose because they claim no physical harm. *Payton* v. *Abbott Labs.,* 386 Mass. 540, 544-557 (1982). *Stockdale* v. *Bird & Son,* 399 Mass. 249, 251-252 (1987). *Garrity* v. *Garrity,* 399 Mass. 367, 369 (1987). If they establish that the school staff committed intentional infliction of emotional distress[3], they lose because the defense of sovereign immunity has not been waived with respect to that tort by the Massachusetts Tort Claims Act. G. L. c. 258, § 10(*c*), appearing in St. 1978, c. 512, § 15. The Tiltons apparently attempt to escape between the horns by framing their action as one for "reckless infliction of emotional distress", which they contend is a tort distinct from intentional infliction of emotional distress and hence not barred under the Tort Claims Act.

We agree with the trial judge's analysis in rejecting that contention. "Reckless" behavior, like "wanton" behavior, has traditionally been treated as a species of intentional behavior, because, by definition, the tortfeasor knew or should have known that harm was the probable outcome of his actions. "The essence of wanton or reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another [citations omitted]. Wanton or reckless conduct amounts to what has been variously described as indifference to or disregard of probable consequences to that other [citations omitted] or the rights of that other." *Commonwealth* v. *Welansky,* 316 Mass. 383, 399 (1944). *Commonwealth* v. *Papadinis,* 23 Mass. App. Ct. 570, 574-575 (1987). The reference in G. L. c. 258, § 10(*c*), to the tort of "intentional mental distress" refers to the tort first recognized in *George* v. *Jordan Marsh Co.,* 359 Mass. 244 (1971), and later applied in *Agis* v. *Howard Johnson Co.,* 371

---

[2] As, for example, by being lax in whatever duty they may have had to censor the yearbook.

[3] As, for example, by spreading false accusations against Daniel.

Mass. 140 (1976) (where it is referred to, at 143, as "the cause of action for intentional or reckless infliction of emotional distress"), and *Simon* v. *Solomon,* 385 Mass. 91 (1982) (where it is referred to, at 95 and 97, as the tort of "reckless infliction of emotional distress"). See discussions in *Payton* v. *Abbott Labs.,* 386 Mass. at 554-555; *American Velodur Metal, Inc.* v. *Schinabeck,* 20 Mass. App. Ct. 460, 470 (1985). See also *Spring* v. *Geriatric Authy. of Holyoke,* 394 Mass. 274, 282-286 (1985).

The Tiltons also cannot prevail if their complaint is treated as alleging claims in slander and libel, because these intentional torts are also among those specifically enumerated in § 10(*c*) as excepted from the waiver of immunity effected by the Tort Claims Act. We need not reach questions that would be presented otherwise, as to the appropriate role of school officials in censoring student publications and possible First Amendment constraints. As to the application of First Amendment principles to the tort of intentional infliction of emotional distress, see *Fleming* v. *Benzaquin,* 390 Mass. 175, 189-190 (1983); *Godbout* v. *Cousens,* 396 Mass. 254, 265 (1985). See also *Falwell* v. *Flynt,* 797 F.2d 1270 (4th Cir. 1986), cert. granted sub nom. *Hustler Magazine* v. *Falwell,* 480 U.S. 945 (1987).

The Tiltons suggest no set of facts that could be proven in support of the complaint which, in our view, could entitle them to relief against the town. The action was, therefore, correctly dismissed.

*Judgment affirmed.*