Botsford, J.
The plaintiff Donna McCarthy (“Mrs. McCarthy”), the wife of Paul McCarthy (“decedent”), has filed a wrongful death against the Town of Hamilton (“Hamilton” or the “town”) and raises claims individually and as the representative of her minor children. The complaint alleges negligence, gross negligence, willful, wanton or reckless conduct, negligent infliction of emotional distress, and willful, wanton or reckless infliction of emotional stress. The town now moves for summary judgment on all counts of plaintiffs’ complaint. For the reasons set forth below, the town’s motion is DENIED in part and ALLOWED in part.
BACKGROUND
Mrs. McCarthy was the wife of the decedent and is the administratrix of his estate. Plaintiffs Michelle and Meagan McCarthy are the biological children of the decedent and were five years old at the time of his death. Plaintiffs Chelsea, Ashley, and Paul Johnson, who at the time of decedent’s death were ages eight, ten, and eleven respectively, were the stepchildren of the decedent but were not legally adopted by him prior to his death.
The incident giving rise to this action was the decedent’s death by drowning while swimming in Chebacco Lake on August 22, 1996. The lake, located partly in Hamilton and partly in Essex, Massachusetts, is a natural pond of more than twenty acres and therefore, pursuant to G.L.c. 91, §§1 & 35, is considered a Great Pond owned by the Commonwealth.
There is a beach located on the Hamilton side of Chebacco Lake which is owned by the town. Before June 30, 1986, the town operated the beach as a public swimming facility and thus provided a lifeguard during the summer months. On June 30, 1986, after learning that a boy had become entangled in weeds while swimming at the beach, the town decided to close the beach indefinitely. According to the Hamilton Board of Public Works meeting minutes of June 30, 1986:
. . . referencing an incident involving a youth who became entangled in the weeds at Chebacco Beach over the weekend, BPW noted unanimously to close the beach indefinitely, until a solution to the weed problem can be reached.
There is no further evidence in the record concerning the location or nature of the youth’s entanglement, or anything else about this 1986 incident.
The town never took any official action to reopen the beach and after June 30, 1986, no longer provided a lifeguard during the summer months. Furthermore, in the summer of 1986, the town removed a cork buoy line that had designated the swimming area. Subsequent to this, however, a new plastic buoy line was installed by the private Chebacco Lake Association as a navigational line for boats, which may have looked like a designated swimming area. Town employees were aware of persons swimming at the beach after June 30, 1986, but did not instruct any such persons not to do so.
After June 30. 1986, the Town discontinued certain maintenance activities at the beach, such as raking the sand, and mowing and pruning the grass. At some point thereafter however, the town resumed certain maintenance activities, such as emptying trash barrels located on the beach and in the parking lot. On the date of the incident, August 22, 1996, there were three trash barrels at the beach which were regularly emptied by the Hamilton Department of Public Works.
Soon after the town’s June 30, 1986 decision to close the beach indefinitely, a sign which read “No Swimming, Beach Closed” was placed on a tree visible from the parking area of the beach. The sign was subsequently removed by an unknown person. For at least a few years before the August 22, 1996 accident, no sign stating “No Swimming, Beach Closed” or any similarly worded message was placed at the beach.
In the late 1980s, after financing a study on how to deal with the weed problem, the town put down large synthetic mats in the water, beginning at the shoreline, so that the swimmers could walk out into the water without stepping on the weeds. These mats were there on the day of the incident and are still there today. Moreover, from 1986 until the incident in 1996, the town joined the Town of Essex in an effort to rid the lake of the weeds and the accompanying silt that made the water murky by “hydroraking” and “aquascreening. ”
At some point, Mrs. McCarthy was told about the beach by a co-worker, and she had gone there twice before the August 22, 1996 accident. The plaintiffs and the decedent arrived at the beach at approximately 3:00 p.m. on August 22, 1996. At that time, there were other people at the beach and swimming in the water. The decedent drowned while swimming in Chebacco Lake.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Co., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, as a result, the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party *349 opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. The nonmoving party cannot defeat a motion for summary judgment by resting on the pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Negligence, Gross Negligence, and Willful, Wanton and Reckless Conduct Claims
In regard to the negligence, gross negligence, and willful, wanton and reckless conduct claims, the town offers three arguments in support of its motion for summary judgment. Specifically, the town contends that (1) it owed no duty to the decedent because it does not own the lake bed and had no control over the area of the accident; (2) even if it did owe decedent a duty of care and that duty was breached, the town is immune from liability under the Massachusetts Tort Claims Act (“MTCA"), G.L.c. 258, §10(j); and (3) it is immune from liability under the recreational use statute, G.L.c. 21, §17C, because as a matter of law, there was no willful, wanton or reckless conduct involved. The record does not establish any of these contentions as a matter of law, thereby making summary judgment inappropriate.
A.No Duty Because No Ownership
The town argues that because decedent’s accident occurred in the lake, which the town neither owned nor controlled, it had no duty to warn of the dangers associated with swimming in the water, notwithstanding the fact that the town knew that people were using the beach and swimming in the lake. Mrs. McCarthy concedes that the town did not own Chebaco Lake, but contends that it exercised control over it, or at least the portion which the public would consider a swimming beach.
“Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury.” Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). It is well established that an owner ofland has a duty of reasonable care to all lawful visitors. Id. A duty of care may arise from the right to control land, even where the person held to such a duty does not own the land in question. Id. at 744-45.
Here, there is no dispute that the town did not own the lake; however, there is evidence in the record that the town exercised control over the lake. Prior to June 30, 1986, the town operated the beach as a public swimming facility and provided a lifeguard during the summer months. During this period, the town controlled the lake at least up to the buoy line which designated the swimming area. Even after the beach was closed on June 30, 1986, the town continued to exercise at least some control over the area, and the lake in particular. It put mats in the water to keep the weeds down. It also joined with the Town of Essex in an effort to alleviate the dangerous weed condition. And while the town ceased maintaining the beach after June 30, 1986, it later resumed certain maintenance activities, such as emptying trash barrels located on the beach and in the parking lot.
This evidence certainly suggests material issues of disputed fact regarding the town’s exercise of control over the lake and swimming beach. Summary judgment in the town’s favor on a claim of lack of control is inappropriate.
B.Immunity Under the Massachusetts Tort Claim Act, G.L.c. 258, 10(j)
“The Massachusetts Tort Claims Act imposes liability on municipalities ‘in the same manner and to the same extent as a private individual under like circumstances . . .' ” Tyron v. Lowell, 29 Mass.App.Ct. 720, 722 (1991), quoting G.L.c. 258, §2, as appearing in St. 1978, c. 512, §15. A private landowner owes a duty of reasonable care to protect lawful entrants against foreseeable dangers on adjacent property. Id.[2]
The town contends that, even if it had some control of the lake and therefore owed a duty to the decedent, it cannot be held liable under any theory of liability because the facts in this case fall within an exclusion to municipal liability under the MTCA, G.L.c. 258, §10(j). Under §10(j), a municipality is immune from liability for:
any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any person acting on behalf of the public employer.
There is no dispute that the town did not cause the weed problem in the lake. However, the §10(j) exclusion does not apply to the following four types of claims: (1) those based on “explicit and specific assurances of safety or assistance . . .”; (2) claims based on “the intervention of a public employee which causes injury to the victim . . .”; (3) claims based on negligent maintenance of public property; and (4) those asserted by or on behalf of a patient for negligent medical or other therapeutic treatment. G.L.c. 258, §10(j)(1-4).
The third exception to §10(j) is straightforward in stating that harm resulting from poorly maintained public property is not subject to the section’s general liability exclusion. Since Mrs. McCarthy’s claims are based on allegations of negligent maintenance of public property — both the beach, due to lack of appropriate warnings and preventative measures, and the lake, due to the town’s failure effectively to deal with the weeds— the town is not immune from liability under §10(j).
C.Immunity Under the Recreational Use Statute, G.L.c. 21, §17C
General Laws c. 21, §17C(a) (as amended by St. 1998, c. 268) states in pertinent part:
Any person having an interest in land including . . . rivers, streams, ponds, lakes . . . who lawfully per *350 mits the public to use such land for recreational. . . purposes without imposing a charge or fee therefor . . . shall not be liable for personal injury or property damage sustained by such members of the public . . . , while on said land in the absence of willful, wanton or reckless conduct by such owner . . .
Section 17C, both in its original form and as amended, provides immunity for injuries sustained on land used for recreational purposes, “in the absence of willful, wanton or reckless conduct by [the] owner." See Molinaro v. Northbridge, 419 Mass. 278, 279 (1995). Under the recreational use statute, a town qualifies as a “person” protected from claims based on personal injuries sustained while using land made available to the public without charge for recreational purposes. Id., citing Anderson v. Springfield, 406 Mass. 632, 634 (1990). However, nothing in the wording of G.L.c. 21, § 17C indicates that the statute also protects the town from liability for wrongful death claims. “Ordinarily, the Legislature does not intend that the word ‘injury’ should include death.” Zeroulias v. Hamilton American Legion Ass’n, 46 Mass.App.Ct. 912, 913 (1999), quoting Grass v. Catamount Dev. Corp., 390 Mass. 551, 554 (1983) (“the word ‘injury’ within a statute setting forth a one-year period of limitation for injury claims against a ski area operator does not include ‘death’ and, thus, excludes wrongful death claims”). Many statutes use the term “injury or death" when the Legislature’s intention is for the statute to apply to claims for wrongful death as well as claims for injuries not resulting in death. Zeroulias, supra at 913, citing Kromhout v. Commonwealth, 398 Mass. 687, 690-91 (1986). The Legislature’s failure to specify in G.L.c. 21, § 17C that it applied to death claims suggests that “the Legislature purposely placed death and personal injury claims on different footings.” Zeroulias, supra at 914. Thus, the willful, wanton and reckless standard under G.L.c. 21, §17C is not applicable at least to the wrongful death claim at the center of this case.
II.Claims of the Unadopted Children
The town contends that because minor plaintiffs, Paul, Ashley and Chelsea Johnson, are not the natural children of the decedent, they have no valid claims against the town. I agree.
Under the death statute, G.L.c. 229, §1, recovery is limited to “next of kin.” It does not provide for a stepchild to recover for the death of a stepparent. Mendoza v. B.L.H. Electronics, 403 Mass. 437, 438, 440 (1988) (Liacos, J., concurring), citing Poyser v. United States, 602 F.Sup. 436, 440 (D. Mass. 1984). In light of this, the town’s motion for summary judgment on the claims asserted by the unadopted minor plaintiffs is allowed.
III.Negligent Infliction of Emotional Distress Claims
In order to recover for negligently inflicted emotional distress, a plaintiff must prove: “(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology: and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.” Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1993), quoting Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). Accordingly, a successful negligent infliction of emotional distress claim must do more than allege “mere upset, dismay, humiliation, grief and anger.” Id. at 137, quoting Corso v. Merrill, 119 N.H. 647, 653 (1979) (further citations omitted). Rather, plaintiffs must corroborate their mental distress claims with enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial. Id. at 137-38.
In regard to decedent’s two biological children, Michelle and Meagan McCarthy, the record is devoid of any evidence of physical harm to corroborate their emotional distress allegations,[3] an essential element of a claim for negligent infliction of emotional distress. See McNeill v. Metropolitan Property & Liability Insurance, 420 Mass. 587, 590 n.4 (1995), citing Payton, supra at 557. In light of this, I conclude that, as to Michelle and Meghan McCarthy, the plaintiffs have no reasonable expectation of proving physical harm,[4] and summary judgment as to their negligent infliction of emotional distress claims is allowed.
IV.Willful, Wanton or Reckless Infliction of Emotional Distress Claims
Pursuant to G.L.c. 258, § 10(c), a town is immune from liability for any claim “arising out of an intentional tort including . . . intentional mental distress.” “The reference in G.L.c. 258, §10(c) to the tort of ‘intentional mental distress’ refers to the tort first recognized in George v. Jordan Marsh Co., 359 Mass. 244 (1971), and later applied in Agis v. Howard Johnson Co., 371 Mass. 140 (1976) (where it is referred to, at 143, as ‘the cause of action for intentional or reckless infliction of emotional distress’), and Simon v. Solomon, 385 Mass. 91 (1982) (where it is referred to, at 95 and 97, as the tort of ‘reckless infliction of emotional distress’).” Tilton v. Franklin, 24 Mass.App.Ct. 110, 112-13 (1987). Thus, under §10(c), the terms “intentional infliction of emotional distress” and “reckless infliction of emotional distress” are interchangeable.[5] Accordingly, plaintiffs’ claims for willful, wanton and reckless infliction of emotional distress are barred by G.L.c. 258, §10(c).
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judgment as to the claims of the unadopted minor plaintiffs be ALLOWED. It is further ORDERED that defendant’s motion for summary judgment as to the minor plaintiffs’ claims for negligent infliction for emotional distress and as to all plaintiffs’ claims for willful, wanton and reckless infliction of emotional distress be ALLOWED. The motion is otherwise DENIED.

On the facts of this case, there may well be an argument that the decedent was a trespasser and thus not a lawful entrant on the land. If that were so. then the duty of the landowner is to refrain from wanton or willful conduct. It is very clear that the question of the decedent’s status while on the swimming beach (and in the lake) is a mixed one of fact and law, and cannot be resolved by way of summary judgment.

In her Answers to Interrogatories, Michelle McCarthy stated:
[she] was very sad over the loss of her father, and often blames herself for his death, because it was she who asked him to swim out to the buoy line. However, she has not had any medical care for her sadness.
In her Answers to Interrogatories, Meagan McCarthy stated:
[she] was very sad over the loss of her father, but she has not had any medical care because of her sadness.

A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communcations Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

In Forbush v. Lynn, 35 Mass.App.Ct. 696 (1994), the court made a distinction between reckless conduct under G.L.c. 21, §17C, and intentional conduct under G.L.c. 258, § 10(c), holding that the former requires the intention to commit an act which involves a high degree of likelihood that substantial harm may result to another, while the latter requires the intention to cause that harm. Id. at 700. The court farther held that for the purposes of §10(c), reckless conduct generally does not, per se, constitute intentional conduct falling within the § 10(c) exclusion. In making this point, however, the court expressly did not overrule the Tilton decision, but instead distinguished it, stating that the Tilton opinion "relied on the fact that Massachusetts precedent had authoritatively equated reckless infliction of emotional distress with intentional infliction of emotional distress, a tort specifically listed in [G.L.c. 258,] § 10(c)." Forbush, 35 Mass.App.Ct. at 699 n. 7.