Fremont-Smith, J.
INTRODUCTION
Plaintiff Dashawna Brimage (“Brimage”), a 16-year-old former employee of the City of Boston (“Boston” or “City”), brought this action against the City, individual City employees, and the Mayor, alleging sexual harassment, civil rights violations, negligent and intentional infliction of emotional distress, and negligent hiring and supervision of Pedro Rosario, a former city employee and supervisor who raped and sexually assaulted her in 1995.
The action appears before this Court on Boston and the individual City employees’ Motions for Summary Judgment pursuant to Mass.R.Civ.P. 56(c). Boston has moved for judgment on Counts I (sexual harassment), II (violation of the Massachusetts Civil Rights Act), v. (negligent hiring and supervision), and VII (negligent infliction of emotional distress) of the Complaint. Similarly, the employees have moved for judgment on Counts VI (intentional infliction of emotional distress) and VII (negligent infliction of emotional distress) of the Complaint.[3]
For the reasons set forth below, Boston’s Motion for Summary Judgment is ALLOWED in part and DENIED in part. The individual employees’ Motion for Summary Judgment is ALLOWED.
STATEMENT OF RELEVANT FACTS
The long, tortured history of this case begins in 1995, when Boston hired Pedro Rosario (“Rosario”) to supervise a summer program known as the Boston Youth Clean-Up Crew (“BYCC”). Admittedly, Boston did not conduct a background or criminal records check before hiring Rosario. Had the City done so, it would have been revealed that Rosario had been convicted of rape and assault in 1991 and served 32 months in prison.[4] In addition to the rape and assault conviction, Rosario’s pre-1995 criminal record also reflected a conviction for assault and batteiy with a dangerous weapon, and arrests for rape, kidnaping, assault and battery, and assault with intent to murder.
On July 10, 1995, Boston hired 16-year-old Dashawna Brimage as an employee with the BYCC. Brimage was assigned to the West End House in Brighton, and her immediate supervisor was Rosario.
On July 19, 1995, Rosario informed Brimage that she needed to sign some additional job-related paperwork and asked her to wait until he let all other crew employees leave for the day. Rosario then informed Brimage that the necessary paperwork was located at his apartment, and the two of them would need to go there. Brimage accompanied Rosario to his apartment, and later that evening, Brimage was raped and assaulted by Rosario. Although Brimage attempted to resist Rosario’s aggression, Rosario told her that she would lose her job if she did not relent. *6 Fearful of losing her position, Brimage did not resist the rape and assault.
In the days following the attack, Rosario approached Brimage on a number of occasions, reminding her to remain quiet if she did not wish to lose her job. Fearful she would lose her position if she reported the attack, Brimage said nothing. A number of days later, a friend of Rosario told Brimage that Rosario needed to see. her again at his apartment. Brimage, although nervous about another meeting at Rosario’s apartment, nevertheless went to the apartment. Rosario again raped and assaulted Brimage.[5] Rosario again threatened Brimage with the loss of her job if she reported the incident. This time, however, Brimage told a young friend about the attack, and the friend advised her to tell someone about the incidents.
During a group meeting at the Children’s Community Support Collaborative (“CCSC”),[6] Brimage’s friend told a counselor about the incidents. Brimage then admitted to this counselor that she had been twice raped and assaulted by Rosario. Brimage also told her CCSC therapist about the incidents, and also reported to the therapist that Rosario had made sexual comments to both her and a co-worker. Prior to the second rape of Brimage, this co-worker, Annette Smith, complained about Rosario’s comments and was transferred to another work site within the BYCC program. Although Brimage also requested a transfer, her request was ignored by her superiors.
On July 27, 1995, the CCSC therapist reported the incidents to the City of Boston. On July 31, 1995, following an investigation, the City terminated Rosario’s employment on the basis that a sexual harassment claim was made against him; that he engaged in a sexual relationship with a child whom he supervised; and that he had forged payroll records for one of the employees he supervised. Rosario was subsequently arrested and charged with rape, but the charges were later dismissed.
Approximately one year after the assault,, on July 17, 1996, Brimage filed a complaint with the Massachusetts Commission Against Discrimination (“MCAD”). On April 11, 1997, pursuant to G.L.c. 15 IB, §9, Brimage dismissed the MCAD action and filed suit in this Court. Brimage subsequently filed an amended complaint, alleging a violation of 42 U.S.C. §1983, and on December 5, 1997 Boston removed the case to the United States District Court. The case languished in the District Court for nearly three years while the parties wrangled over discovery. Finally, on September 15, 2000 the District Court (O’Toole, J.) dismissed the §1983 claim and remanded the case to this Court.
DISCUSSION
The Summary Judgment Standard
This Court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Nashua Corp. v. First State Insurance Co., 420 Mass. 196, 202 (1995); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. In deciding a motion for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community National Bank, 369 Mass. at 553. In making the determination whether a genuine issue of material fact exists, the Court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. Willits v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991).
In the instant case, for reasons to be explicated, Boston has not established the absence of a triable issue of material fact with respect to the claims for sexual harassment, negligent hiring, and negligent infliction of emotional distress. As such, Boston is not entitled to summary judgment on these counts. However, Boston is entitled to summary judgment with respect to the claims for violation of the Massachusetts Civil Rights Act, negligent supervision, and intentional infliction of emotional distress. The individual city employees are entitled to summary on the claims for intentional infliction of emotional distress and negligent infliction of emotional distress.
Count I — Sexual Harassment
In Count I of Brimage’s Complaint, she alleges that the City, through its employee Pedro Rosario, sexually harassed her in violation of G.L.c. 15IB, the Massachusetts anti-discrimination statute. Pursuant to G.L.c. 151B, §4(16A), it is prohibited for an employer, personally or through its agents, to sexually harass an employee. The City is considered to be an “employer” because the definition of the term includes the Commonwealth of Massachusetts and all political subdivisions. G.L.c. 15IB, §1(5).
Whether Pedro Rosario, as a supervisor/employee of the City of Boston, sexually harassed Brimage is a question of fact, and for purposes of .the summary judgment motion, this Court examines the facts in a light most favorable to the Plaintiff. See Willits, 411 *7 Mass. at 203. The Chapter 151B definition of sexual harassment recognizes two distinct categories of conduct: quid pro quo harassment, where requests for sexual favors or acquiescence in sexual advances are made a condition of employment or a basis of employment decisions; and hostile environment harassment, where an abusive work environment is created by verbal or physical conduct of a sexual nature which “unreasonably interfer[es] with an individual’s work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.” G.L.c. 151B, §1(18); College-Town, Division of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 165-66 (1987). In the instant case, the record reflects both forms of harassment, although the former category is far more prevalent. There is uncontroverted evidence that Rosario engaged in sexual activity with Brimage. There is further evidence that this sexual activity came about only after Rosario informed Brimage that if she did not participate, she may lose her job. In addition, there is evidence in the record that in the days following the sexual assault and rape, Rosario told Brimage that if she wished to keep her job, she should remain quiet about what happened in the apartment. Thus, on this record and on these facts, it is clear to this Court that sexual relations with Rosario became an implied term of Brimage’s employment, and that she feared the loss of her job if she failed to follow the directions and commands of Rosario.[7]
To reiterate because of its importance, under c. 15IB, an employer is “strictly liable” for sexual harassment committed by its supervisors. See G.L.c. 15IB, §4(16A); College-Town, Division of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 165 (1987); Messina v. Araserve, Inc., 906 F.Supp. 34, 37 (D.Mass. 1995). In the instant case, the record reflects that the City hired Rosario as a supervisor, assigned Brimage to Rosario for his supervision, and that as a result of Rosario’s conduct both at the place of employment and away from the place of employment, she feared the loss of her job if she did not engage in sexual relations with Rosario. The facts reflect a classic case of quid pro quo sexual harassment arising out of the plaintiffs employment relationship with Rosario, her immediate supervisor, so that Boston may be liable for his behavior.[8]
This Court’s analysis of the sexual harassment claim, however, does not end there. Pursuant to G.L.c. 15IB, §5, an individual claiming discrimination under §4 must file a complaint with the MCAD within six months of the alleged discrimination. After timely filing with the MCAD, the plaintiff may then bring the action in this Court. G.L.c. 15IB, §9. Here, it is undisputed that Brimage did not file her complaint with the MCAD within the six-month period contemplated by G.L.c. 15IB, §5. As such, Boston contends that the sexual harassment count should be dismissed as a result of Brimage’s failure to timely file the complaint with the MCAD. See Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994).
The Plaintiff, however, contends that G.L.c. 260, §7 allows for the tolling of the six month requirement as a result of Brimage’s minority status.[9] Thus, Brimage argues that the six-month period in which she had to file a complaint before the MCAD was tolled on account of her minority, and she properly filed the complaint with the MCAD well in advance of her 18th birthday, the age of majority in the Commonwealth. This Court agrees.
Although the appellate courts of the Commonwealth have yet to address the issue of whether the six-month time period for filing a complaint with the MCAD can be squared with the minority tolling provision of G.L.c. 260, §7, this Court agrees with the reasoning in Bills v. Boby's Food Enterprises, Inc., 1998 WL 1184157 (Superior Court, February 5, 1998, Gershengorn, J.), and adopts the analysis therein, that the six-month time period established in G.L.c. 151B, §5 is not a jurisdictional prerequisite, but is rather a statute of repose subject to limitations of waiver, estoppel, and equitable tolling. See Christo v. Edward Boyle Insurance Agency, Inc., 402 Mass. 815, 817 (1988).
Moreover, although G.L.c. 15IB, §5 makes no explicit mention of a tolling provision with respect to minority status, the Appeals Court has suggested in dicta that tolling the six-month filing requirement pursuant to G.L.c. 260, §7 is permissible. See Cherella v. Phoenix Technologies, Ltd., 32 Mass.App.Ct. 919, 920 (1992). In Cherella, the Court refused to toll the six-month period because the plaintiff in that case suffered from an alleged mental incapacity due to pain from a physical injuiy. However, the Court noted that if the facts reflected a condition contemplated under G.L.c. 260, §7, such as being a “minor” or a “mental illness,” tolling would be entirely appropriate. Id. at 920. Because G.L.c. 260, §7 specifically allows for tolling for both minority status and mental illness, there is no reason to conclude that, in circumstances such as the instant case, the aforementioned tolling provision should not toll the six-month MCAD filing requirement. As such, this Court concurs with the reasoning of Judge Gershengorn, so that the six-month time period was tolled by Brimage’s minority status at the time the discriminatory acts occurred and would not begin to rim until her 18th birthday. As Brimage filed her complaint with the MCAD well before her 18th birthday, she complied with the strictures of G.L.c. 15IB, §5.
Accordingly, Boston is not entitled to summary judgment on Count I of the Complaint.
Count II — Violation of the Massachusetts Civil Rights Act
In Count II of the Complaint, which is filed pursuant to G.L.c. 12, §1II, the Massachusetts Civil Rights Act (“MCRA”), Brimage alleges that Boston violated her civil rights by failing to protect her from sexual harassment.
*8 The MCRA forbids “any person or persons” from interfering by threats, intimidation, or coercion with another’s enjoyment of his or her civil rights. G.L.c. 12, §§11H, 1II. The Legislature has directed that “[i]n construing statutes . . . unless a contrary intention clearly appears . . . [the word] ‘[plerson’ . . . shall include corporations, societies, associations and partnerships.” Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 95 (1999). However, the term “person" does not ordinarily include the State or political subdivision thereof. Sarvis, 47 Mass.App.Ct. at 96 n. 10, citing Hansen v. Commonwealth, 344 Mass. 214, 219 (1962). Thus, the definition of “person" does not include the City of Boston. Moreover, unlike a c. 15IB claim, Boston may not be held liable for a violation of the MCRA under a theory of respondeat superior. See Sarvis, 47 Mass.App.Ct. at 96-97; Armstrong v. Lamy, 938 F.Supp. 1018, 1042 (D.Mass. 1996). Plaintiffs MCRA claim, in addition, is barred by the exclusivity provision of c. 15IB. Doe v. Purity Supreme, Inc., 422 Mass. 563, 567 (1996). Accordingly, summary judgment is allowed as to Count II of the Complaint.
Count V — Negligent Hiring and Supervision
In Count v. of the Complaint, Brimage alleges that the City negligently hired and supervised Rosario, and that this negligence was a substantial contributing factor in the injuries suffered by her. Before reaching the merits of the plaintiffs claim, however, the City has raised a number of statutory defenses, and each will be addressed individually.
First, Boston contends that the exclusivity provision of the Workers’ Compensation Statute bars Brimage’s negligence claim. Under the statute, common law actions are barred where “the plaintiff is shown to be an employee; his condition is shown to be a ‘personal injury’ within the meaning of the [workers’] compensation act; and the injury is shown to have arisen ‘out of and in the course of . . . employment.’ ” Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996), citing G.L.c. 152, §26. In the instant case, it is undisputed that Brimage was both an employee and suffered a personal injury. However, on these disputed facts, her injury did not arise “out of and in the course of [her] employment.”
The summary judgment record demonstrates that Rosario requested that Brimage accompany him to his apartment after the close of the working day. Brimage agreed to follow Rosario to his apartment, and both individuals left the work site. Rosario’s apartment, the location of the rape and assault, was a private residence approximately one mile from the work site. On this record and on these disputed facts, Brimage’s injury did not arise out of and in the course of her employment. See Larocque’s Case, 31 Mass.App.Ct. 657, 658-59 (1991) (“ ‘in the course of [employment]’ refers mainly to the time, place, and circumstances of the injury in relation to the employment”). As the evidence is clear that the plaintiffs injury occurred outside the workplace, during personal time, and in a personal residence, the exclusivity provision of the Workers’ Compensation Statute does not apply, and the aforementioned provision will not bar Brimage’s common law negligence claims.[10]
Next, Boston contends that the Massachusetts Tort Claims Act (“MTCA"), G.L.c. 258, § 10(c), which bars any claim that arises out of an intentional tort, bars Brimage’s negligence claims.[11]
However, although it is undisputed that § 10(c) bars Brimage’s claims for intentional torts, the allegations that Boston negligently hired and supervised Rosario is not a tort barred under the section. Section 10(c) specifically bars intentional torts, and by its very nature, negligence in the hiring and supervision of an employee is not an intentional tort. Although the ultimate result of the alleged negligent hiring was the rape and assault of Brimage, the instant allegation is with respect to negligence against the City and its employees. As Brimage has alleged that Boston, through its employees, failed to adequately check Rosario’s background before hiring him, the claim is based upon the negligent act of the city, not upon any negligent or intentional act of Rosario.
Finally, Boston contends that G.L.c. 258, §10(j), the so-called statutory public duty rule, bars recovery for negligent hiring and supervision.[12] In the instant case, Boston contends that its alleged negligence in hiring and supervising Rosario is simply a recast claim alleging a failure to “prevent or diminish” the sexual misconduct of Rosario, which it did not “originally cause.”
The Supreme Judicial Court, in the recent case of Brum v. Town of Dartmouth, 428 Mass. 684 (1999), referred to §10(j) as an “interpretive quagmire,” calling the language of the statute “convoluted and ambiguous.” Id. at 692. The Court labored to give meaning to the phrase “originally caused by the public employer” so that it would not swallow up the immunity intended in §10(j) but would not itself become meaningless surplusage. Id. at 692-96. In Brum, where intruders into a school murdered the plaintiffs son, the Court finally concluded that §10(j) excluded the defendants’ liability for their failure to remedy a lack of security on school grounds and thus to prevent the death of the plaintiffs son, because the injury was not “originally caused by the public employer.” Id. at 696.
In the instant case, Brimage has set forth two theories for the City’s negligence in Count V: the failure properly to investigate Rosario’s background before hiring him, and the failure properly to supervise Rosario. With respect to the negligent supervision allegation, it is clear that §10(j) bars this count. The failure to supervise Rosario can only be characterized as the failure to prevent Rosario from being in the position to attack Brimage. See Brum, 428 Mass. at 695. The allegation that Boston failed to supervise *9 Rosario or to transfer Brimage so as to prevent Brimage’s injuries is similar to Brum's claim that the Dartmouth Public Schools failed to protect her son from three attackers. Id. at 696. The Supreme Judicial Court in Brum dismissed the plaintiffs claim that the town failed to protect her son, and to the extent that the allegations in the instant case are similar to the allegations in Brum, this Court does the same.
The hiring of Rosario, however, stands on a different footing. It was an affirmative act on the part of the City that originally created a situation in which a sexual predator held a job supervising adolescents within the BYCC program with foreseeable results. See Brum, 428 Mass. at 695. This Court’s ruling that §10(j) should not bar a negligent hiring allegation is consistent with the Supreme Judicial Court’s holding in Bonnie W. v. Commonwealth, 419 Mass. 122 (1994), where the Commonwealth’s action of recommending a sexual assailant for employment was held to be outside the protections of §10(j). Id. at 125. The Supreme Judicial Court in Brum specifically noted the distinction between negligent supervision and the negligent recommendation made in Bonnie W., explaining that while the negligent failure to supervise is barred under §10(j), the negligent recommendation should not be. See Brum, 428 Mass. at 695.
The Court concludes that the City’s allegedly negligent hiring here is analogous to the negligent recommendation in Bonnie W.. As noted above, the Court in Bonnie W. characterized a negligent recommendation as an affirmative act on the part of the Commonwealth that created a situation where a sexual predator held a job giving him access to every trailer in a trailer park. See Brum, 428 Mass. at 695, citing Bonnie W., 419 Mass. at 125. Similarly here, the City’s affirmative act of hiring a convicted rapist created a situation where a sexual predator held a supervisory position over adolescents, so that a jury could reasonably conclude that negligent hiring was “participation in risk-creating conduct which contributed to the situation which caused the harm.” Armstrong v. Lamy, 938 F.Supp. at 1045, citing Bonnie W., 419 Mass. at 124.
Finally, as §10(j) is not applicable, the evidence clearly establishes a triable issue of material fact as to whether the employer knew or should have known that Rosario was unfit and posed a danger to others with whom he was likely to come into contact. See Armstrong v. Lamy, 938 F.Supp. 1018, 1046 (D.Mass. 1996); Foster v. The Loft, Inc., 26 Mass.App.Ct. 289 (1988). Not only does the record contain evidence upon which a jury could conclude that the City did not complete reasonable due diligence before hiring Rosario, and that, had the City conducted a criminal background check, it would have been revealed that Rosario had recently served time in prison for rape, but even without a criminal background check, Rosario’s resume itself reflected a long, unexplained gap in his employment history representing the time he served in prison, which should have put the City on notice to make reasonable inquiry. On these alleged facts, a reasonable jury could determine that the City negligently hired Rosario, and that his hiring was a substantial contributing cause of the plaintiffs injuries. Accordingly, while summary judgment is allowed with respect to the claim for negligent supervision, summary judgment is denied with respect to the claim for negligent hiring.
Count VI — Intentional Infliction of Emotional Distress
At oral argument, Brimage, through her counsel, waived the claim for intentional infliction of emotional distress, as to which there is, in any event, no evidence pertaining to the individual City employees, and which is also, in any event, barred by the MTCA. G.L.c. 258, § 10(c). See also Tilton v. Town of Franklin, 24 Mass.App.Ct. 110, 112 (1987). As such, summary judgment is allowed as to Count VI of the Complaint.
Count VII — Negligent Infliction of Emotional Distress
In Count VII of the Complaint, Brimage alleges negligent infliction of emotional distress against both the City and the individual City employees in their individual capacity. With respect to the individual City employees, it is well settled that they are protected from suit under the MTCA, which provides that “no public employee . . . shall be liable for any injury . . . caused by his negligence or wrongful act or omission while acting within the scope of his office or employment.” G.L.c. 258, §2. As Brimage has proffered no evidence that any individual City employee was acting outside the scope of employment with respect to the negligent hiring of Rosario, the individual City employees cannot be held personally liable and are entitled to summary judgment on this count. See McNamara v. Honeyman, 406 Mass. 43, 46 (1989).
As for the City, to prove negligent infliction of emotional distress, the plaintiff must demonstrate: (1) negligence (duty of reasonable care and breach of that duty); (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under like circumstances. Payton v. Abbott Labs, 386 Mass. 540, 556-57 (1982). In the instant case, while the exclusivity provision of the Workers’ Compensation Statute is not applicable, see pp. 11-12 of this opinion, supra, §10(j) bars any emotional distress arising out of the City’s alleged failure to transfer Brimage after she complained of Rosario’s actions. See pp. 13-15 of this opinion, supra. To the extent that the plaintiff alleges emotional distress resulting from Rosario having been originally negligently hired, Count VII is redundant of so much of Count v. as to which the Court has denied summary judgment. See p. 15 of this opinion, supra.[13] Accordingly, summary judgment is allowed as to Count VII.
*10 ORDER
It is therefore ORDERED that the Motion for Summary Judgment is DENIED with respect to Count I of the Complaint (sexual harassment by the City); ALLOWED with respect to Count II (violation of the Massachusetts Civil Rights Act by the City); ALLOWED with respect to Count v. insofar as it alleges negligent supervision by the City, and DENIED with respect to Count v. insofar as it alleges negligent hiring by the City'; ALLOWED with respect to Count VI (intentional infliction of emotional distress by the individual City employees); and ALLOWED with respect to Count VII (negligent infliction of emotional distress by the City and the individual City employees).[14]

 The Plaintiffs Amended Complaint alleges 10 counts. Counts III, IV, VIII, and IX are alleged against Defendant Pedro Rosario and are not the subject of this motion. Count X alleged a violation of 42 U.S.C. §1983, and was subsequently dismissed by the United States District Court. Brimage v. City of Boston, Civ. No. 97-12681-GAO (D.Mass. September 15, 2000, O'Toole, J.).

 Rosario is currently serving a life sentence for a rape and murder unrelated to the instant case. See Commonwealth v. Rosario, 430 Mass. 505 (1999).

 Brimage describes the circumstances of this second rape in an answer to an interrogatory. She does not, however, remember the date of the incident, other than remembering that Rosario's friend approached her during work hours.

 The CCSC is a residential facility operated by the Massachusetts Department of Mental Health. Brimage resided at this facility during the relevant time period of the instant case.

 It is important to note that the Massachusetts Tort Claims Act (MTCA), G.L.c. 258, does not protect the city from liability with respect to the sexual harassment allegation. The Supreme Judicial Court has held that there is “no doubt that the antidiscrimination statute, G.L.c. 151B, the statute on which the city’s liability depends, waives the sovereign immunity of the Commonwealth and all political subdivisions . . . thereof by including them in the statutory definition of persons and employers subject to the statute.” Bain v. City of Springfield, 424 Mass. 758, 763 (1997).

 Contrary to Boston’s contention, the exclusivity provision of the Workers’ Compensation Statute does not bar Brimage's sexual harassment claim. Although the exclusivity provision bars common law tort claims in certain circumstances, see pp. 11-12 of this opinion, infra, the Legislature has provided employees with a separate remedy for sexual harassment in G.L.c. 151B, §4, as is clear from such employment cases as Doe v. Purity Supreme, Inc., 422 Mass. 563, 566-567 (1996) and College-Town, Division of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 169 (1987). It follows that Brimage’s statutory sexual harassment claim under c. 15 IB is not a common law tort claim, and that the exclusivity provision of the Workers’ Compensation Statute is inapplicable.

 General Laws c. 260, §7 provides that “[i]f the person entitled thereto is a minor, or is incapacitated by reasons of mental illness when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed.”

 The harm alleged in Count v. of the Complaint is different than the harm alleged in Count I. In Count V, Brimage alleges negligence against the City, resulting in her rape and assault by Rosario. In Count I, Brimage alleges sexual harassment under c. 151B, and further alleges that this harassment took place at work. Thus, Brimage's allegation under c. 15 IB survives because the record reflects evidence that Rosario sexually harassed her at work as well as off site by means of their work relationship, even though the actual rapes and sexual assaults happened off the work site and not in the course of her employment for Workers’ Compensation exclusivity provision purposes.

 General Laws c. 258, §10(c) bars recovery for: “(a)ny claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations . . . .”

 Generai Laws c. 258, §10(j) bars recovery for: “[a]ny claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer ....’’

 Where the Payton v. Abbott Labs criteria are shown, emotional distress is recoverable where it results from any tortious conduct, such as alleged in Count V.

 Counts III (assault and battery by Rosario), IV (violation of the Massachusetts Civil Rights Act by Rosario), XIII (intentional infliction of emotional distress by Rosario), and IX (negligent infliction of emotional distress by Rosario) are not the subject of this motion. Count X (violation of 42 U.S.C. §1983 by the individual City employees) has been previously dismissed by the United States District Court.