Kottmyer, J.
The plaintiff, Patricia Dalton, as executrix, seeks damages for the wrongful death and conscious pain and suffering of her husband, Joseph I. Dalton (“Dalton”), from defendants Doctor E. Mei Shen-Hsieh (“Dr. Shen”), the Laboratory for Clinical Medicine, Inc. (“LCM”) and First Pathology Associates. LCM now seeks summary judgment arguing that Dr. Shen was not its agent and it is therefore not liable for her acts and omissions. For the following reasons, LCM’s motion for summary judgment is DENIED.
SUMMARY JUDGMENT RECORD
The following are the undisputed facts in the light most favorable to the plaintiff.
In September 1992, Dalton saw his physician complaining of an irregular pigmented lesion on his left upper back. The lesion was removed in the office of Dalton’s physician and the tissue was transported to CYTODX/LCM in Peabody, Massachusetts for evaluation.[1] Dr. Shen, a pathologist, examined the tissue samples at the Peabody, Massachusetts office of LCM and reported to Dalton’s physician that the specimen contained a dysplastic nevus, a benign condition.
Five years later in July 1997, Dalton experienced a migraine headache and vision problems while golfing. He visited his physician the following day. An MRI revealed a brain tumor. The tumor was removed and further evaluation revealed that it was metastatic melanoma. Dalton’s physicians then obtained samples of the lesion removed five years earlier and determined that the specimen revealed malignant melanoma. Dalton underwent surgery and chemotherapy but, died as a result of the metastatic melanoma in November 1998.
In approximately 1979, Dr. Olken, the Chief of Pathology at Lynn Hospital, had established LCM to evaluate clinical and cytological specimens submitted by private physicians. The pathologists who practiced at Lynn Hospital formed a partnership called Pathology Practice Associates (“PPA”). PPA provided clinical and cytology services to physicians through LCM.[2] PPA had an ownership interest in LCM.[3] PPA’s partners and employees included the pathologists at Lynn Hospital and a clinical chemist. (Shen Dep. at 30.) In 1992, Dr. Shen was a partner in PPA. The summary judgment record is devoid of evidence as to the terms of the arrangement between PPA and LCM pursuant to which PPA provided pathologists to LCM.
LCM had a facility separate from Lynn Hospital, located across the street at 225 Boston Street. Later LCM expanded to a new office in Peabody. PPA did not have a separate office. LCM was staffed on a rotating schedule by the PPA pathologists and employees, including Dr. Shen. Staffing depended on the availability of the pathologists and there was no set schedule. One pathologist would travel from Lynn Hospital to LCM in the afternoon to review all clinical and surgical specimens submitted for examination that day. On average, the pathologists reviewed twenty to thirty specimens per day at LCM. The report relating to Shen’s examination of Dalton’s tissue was on LCM letterhead, signed by Shen. PPA’s name was typewritten under Shen’s signature. The record is unclear whether LCM or PPA billed and received payment for services rendered by pathologists at the Peabody or 225 Boston Street facilities, but clear that the bills were on LCM letterhead. PPA handled the billing for work done by the pathologists at Lynn Hospital. Dr. Shen received no compensation directly from LCM for the services she rendered at the lab, but did receive a share of PPA’s profits. Again the summary judgment record contains no information as to the transmission of funds from LCM to PPA.
From 1986 to 1992, Dr. Shen served as Director of Laboratories at Lynn Hospital. In 1992, she also served on the board of directors of LCM. At some point after 1992, PPA sold its interest in LCM.
DISCUSSION
The Court grants summary judgment where there is no genuine issue of material fact and the summary judgment record entitles the moving party to a judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party has the burden of affirmatively demonstrating that a genuine issue of material fact does not exist. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment *253 who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party's case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes an absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson, 404 Mass. at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass 207, 209 (1989). In setting out facts, this Court resolves any conflicts in the summary judgment record and makes all logically permissible inferences in the plaintiffs favor. Attorney General v. Bailey, 386 Mass. 367, 370-71 (1982).
LCM argues that “it did not have control or tire right to control the conduct of Dr. Shen with respect to her professional review and diagnosis of specimens” and therefore it is not vicariously liable for her negligence as a matter of law. Generally, employers and principals are vicariously liable for the acts of their employees or agents committed within the scope of their employment/authorization. Kansallis Finance, Ltd. v. Fern, 421 Mass. 659, 665 (1996); Kelly v. Middlesex Corp., 35 Mass.App.Ct. 30, 35 (1993).
Both parties rely on Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. 424, 432 (2001). There the Supreme Judicial Court held that a hospital management company could be found vicariously liable for the negligence of a nurse employed by the hospital in the emergency room where the nurse was performing a task in furtherance of its business. Id. The Court expressly approved the statement that “to establish a so-called master-servant relationship that may give rise to vicarious liability, it is not necessary that the master have the right to control the details of the servant’s activities or his exercise of judgment in carrying out the master’s instructions.” Id. at 431. The Court quoted language in Konick v. Berke, Moore Co., 355 Mass. 463, 468 (1969), to the effect that ”[i]f the relationship of master and servant exists and if what the servant is doing is in the furtherance of the master’s business, i.e., in the scope of employment, the law gives the master the right of direction and control.” Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. at 431.
It is true as argued by LCM that the Court in Hohenleitner distinguishes between physicians and nurses. Id. The Court repeats the oft-cited language that “in most instances, a physician acts as an independent contractor" rather than an employee of the healthcare facility at which he works. Id., citing Kelley, 395 Mass. at 662. However, the Court also states that, while the nature of the medical profession suggests that, in most instances, a physician acts as an independent contractor, a physician may be deemed a servant where a hospital controls the details of the physician’s physical activities even though “a hospital can never control the independent medical judgment of a physician.” Id. at 432-33.[4]
Based on the summary judgment record, LCM has not established the absence of a genuine issue of fact as to its vicarious liability. A corporation can only act through employees and agents. Sarvis v. Boston Safe Deposit and Trust, 47 Mass.App.Ct. 86, 96 (1999). To determine whether one acting for another is a servant or an independent contractor, the court considers a number of factors, including whether the alleged master had the right to hire and fire, set salaries, set work schedules, set terms of employment or exercise control over the professional activities of the individual in question. See Kelley v. Rossi, 395 Mass. 659, 661 (1985); Chase v. Independent Practice Association, Inc., 31 Mass.App.Ct. 661, 666 (1991). It does not matter whether Dr. Shen is labeled an employee of LCM or an agent or subagent (through PPA), see Sarvis, supra, 47 Mass.App.Ct. at 97. A corporation may be held vicariously liable for the conduct of an employee or agent within the scope of employment if it is of the kind she is employed to perform, if it occurs substantially within the authorized time and space limits, and if it is motivated, at least in part, by a purpose to serve the principal. See Kansallis Finance Ltd. v. Fern, supra, 421 Mass. at 665; Wang Labs, Inc. v. Business Industries, Inc., 398 Mass. 854, 859 (1986).
Based on the following facts, the question whether LCM is vicariously liable for negligence of Dr. Shen in reviewing the Dalton slides is a question of fact precluding summary judgment. LCM is in the business of evaluating tissue samples, an activity only a pathologist can perform. Dr. Shen reviewed the specimens submitted to LCM for evaluation on a regular basis at LCM’s place of business using LCM’s equipment. Bills for the services she provided were rendered on LCM letterhead. Dr. Shen received payment for the services she rendered at LCM indirectly through PPA, a partnership in which Dr. Shen was a partner and which held an ownership interest in LCM. Dr. Shen did not select the slides she reviewed on behalf of LCM; she reviewed all slides submitted to LCM for examination on the days she covered. Dr. Shen reviewed the Dalton slides on behalf of LCM. She reported the results of her examination of Dalton’s tissue on LCM letterhead. Neither the fact that LCM did not exercise control over Dr. Shen’s clinical judgment nor the fact that she received compensation for reviewing slides at LCM indirectly through PPA precludes a finding that, when she reviewed the specimen from Joseph Dalton, she *254 was a servant for whose negligence LCM is vicariously liable.
CONCLUSION
Based on the summary judgment record, there is a material question of fact as to whether LCM is vicariously liable for any negligence on the part of Dr. Shen in reviewing slides of Joseph Dalton’s tissue. The Laboratory for Clinical Medicine’s motion for summary judgment is DENIED.

CYTODX was “part of’ LCM. CYTODX was responsible for evaluating CYTO pathology specimens and LCM tissue specimens.

As indicated in the text, the summary judgment record contains scant detail as to the relationship between PPA and LCM, notwithstanding the materiality of the relationship.

Although the summary judgment record is not clear as to the extent of PPA’s ownership interest in LCM, it suggests that in 1992 PPA was the sole owner of LCM.

Plaintiff points out that Dr. Shen sat on the board of directors for LCM. Ordinarily, a director is not an agent of the corporation he serves. Restatement (Second) of Agency §14C (1958). However, the board may appoint an individual director agent for the corporation. Id. In that case, the corporation would be liable for the acts of the director/agent as it would be for the acts of any other agent. The record is silent as to any such appointment.