Tucker, Richard T., J.
I. INTRODUCTION
This action arises from the termination of the D&S Real Estate Trust (“the trust") by one of its trustees, Frederick D. Smith (“Frederick”). Douglas, Stuart, Derrick, Rebecca, and Robert Smith, along with the estate of Shaw Smith (“the plaintiffs”) assert claims against Frederick for breach of fiduciary duty, indemnification, and seeking a declaratory judgment. Before the court is Frederick’s Motion to Dismiss and for Damages under G.L.c. 231, §6F and Mass.R.Civ.P. 11. For the reasons that follow, that motion will be allowed in part and denied in part.
II. BACKGROUND
The following facts are taken from the allegations of the plaintiffs’ Complaint, which the court accepts as true for the purposes of this motion only. See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). The court supplements the allegations of the Complaint with matters of public record. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).
A. The Trust Provisions
The trust was originally settled by Shaw on May 14, 1985. The trust owns commercial real estate in Shrewsbury, Massachusetts. Frederick, Stuart, and Douglas are the co-trustees of the trust. The plaintiffs and Frederick are, at present, the beneficiaries of the trust. The trust provides, in pertinent part:
ARTICLE IV
Except as hereinafter provided in the case of termination of the this Trust, the Trustee shall have no power to deal in or with the trust estate except as directed by a majority of the beneficiaries . . . The trust may be terminated at any time ... by one or more of the beneficiaries by notice in writing to the Trustee!,] or by the Trustee ... by notice in writing ... to all the beneficiaries, which termination shall not take effect until recorded in the Registry of Deeds where this instrument is recorded . . .
ARTICLE VII
No Trustee shall be liable or responsible in any way for any act of default of any co-trustee or for any loss or expense from or occasioned by anything done or neglected to be done by any co-trustee.
ARTICLE IX
The Trustee shall have no power or authority to enter into any contract which shall bind or affect the beneficiaries personally, or call upon them for payment of any sums of money or any payment whatsoever, but the Trustee shall be entitled to indemnity against any and all liabilities either in contract or tort which they may incur or to which they may be subject out of the trust property.
*260 On July 8, 2010, Frederick provided written notice of termination of the trust to the other trustees via certified mail, and recorded the termination at the South Middlesex District Registry of Deeds and the Worcester District Registry of Deeds.
B. The Norfolk Litigation
The plaintiffs maintain that the trust does not authorize Frederick to terminate the trust unilaterally, and that such termination will create substantial tax liabilities on the part of the beneficiaries as a result of trust assets being transferred to their personal ownership. Based on that position, Douglas and Stuart brought Norfolk Civil Action No. 10-1382 against Frederick (“the Norfolk litigation”). In the Norfolk litigation, Douglas and Stuart asserted the following claims in their Verified Complaint, filed on July 27, 2010. Count I sought a declaratory judgment that
26.[T]he trust does not permit Frederick Smith, acting alone, from terminating [sic] a trust holding millions of dollars to the detriment of the remaining beneficiaries.
27. The Trust, as interpreted by all of the trustees and beneficiaries over a prolonged period of time has always required at least a majority, if not unanimous consensus, and a reasonable basis for conduct, as the grounds for action with regard to the Trust and the Trust Corpus.
28. Nothing in the Trust permits Frederick Smith to take unilateral action contrary to the wishes of a majority of the Trustees and to the detriment of the remaining beneficiaries . . .
30. The conduct of Frederick Smith is not only in violation of specific language of Article XI of the Trust which precludes Frederick Smith from causing personal liabilities of [sic] beneficiaries (’. .. the [t]rustee shall have no power or authority to . . . affect the beneficiaries personally, or call upon them for any payment of any sums or money or any payment whatsoever . . .’), but also in violation of the purpose of the Trust, and therefore [sic] void and invalid.
32. Alternatively, a majority of the Trustees request an interpretation of the Trust which would hold Frederick Smith liable to his co-beneficiaries for the tax consequences, property depreciation, and other incidental and consequential damages if his conduct, even if appropriate, causes damages to his co-beneficiaries . . .
Count II asserted a claim for breach of fiduciary duty against Frederick, alleging that:
35. [I]f Frederick Smith has the legal right to terminate the Trust... then Frederick Smith is obligated to act with utmost good faith in his actions.
36. Frederick Smith’s conduct has no reasonable basis or explanation other than to harm the beneficiaries of the trust.
37. Frederick Smith’s conduct violates his fiduciary duties under the Trust.
Count IV asserted a claim for tortious interference with advantageous contractual relationships, alleging that:
45. Frederick Smith, particularly, has acted with malice to harm an advantageous lease negotiation and execution with a tenant, with apparent attempt [sic] to use this conduct as leverage in other matters.[2]
On November 30, 2010, the Norfolk Superior Court (Brady, J.) dismissed Counts I, II, and IV for failure to state a claim.[3] The court held that, contrary to Douglas and Stuart’s allegations in support of Count I, the trust specifically provided that the “trust may be terminated at any time ... by one or more of the beneficiaries by notice in writing to the Trustee!,] or by the Trustee ... by notice in writing ... to all the beneficiaries ...” Such language authorized Frederick’s termination of the trust in his capacity as trustee.
Similarly, the court concluded that “[n]either was Frederick’s action a breach of his fiduciary duty . . . The Declaration of Trust provided for unilateral termination. Because Frederick’s termination accords with the terms of the Trust, Counts I, II, and IV must fail.”
C. The Present Litigation
Undeterred by this outcome in the Norfolk litigation, Douglas and Stuart, along with the rest of the plaintiffs, instituted this action. In this action, the plaintiffs assert the following claims.
Count I seeks a declaratory judgment that
36. Article XI of the Trust specifically provides for indemnity for actions taken, as the Trust clearly states that “the trustee shall have no power or authority to enter into any contract which shall bind or affect the beneficiaries personally, or call upon them for any payment of any sums or money or any payment whatsoever.”
37. As a result of Frederick Smith’s attempts to dissolve the Trust. .. Frederick Smith has engaged an act [sic] which has caused an immediate taxable event to the Trust corpus, exceeding $700,000, jointly and severally to the beneficiaries.
38. The beneficiaries are entitled to an order declaring that Frederick Smith alone is liable for the sum and to indemnify and hold the beneficiaries harmless from any liability as required by Article XI.
Count II asserted a claim for breach of fiduciaiy duty against Frederick on behalf of all plaintiffs, alleging that:
40. The damages caused by Frederick Smith’s refusal to sign an advantageous lease with TangenX, an existing tenant, caused waste and damage to the Trust Corpus.
*261 41. The refusal of Frederick Smith to sign said lease, with foreknowledge that his refusal would constitute extreme wastage, constituted a breach of Frederick Smith’s fiduciary duties to the beneficiaries.
43. Article XI of the [t]rust specifically provides for indemnity for actions taken . . .
44. As a result of Frederick Smith’s attempts to dissolve the Trust. .. Frederick Smith has engaged an act [sic] which has caused an immediate taxable event to the Trust corpus, exceeding $700,000, jointly and severally to the beneficiaries.
Count III asserted a claim on behalf of Douglas and Stuart against Frederick, seeking a declaration that he was obligated to indemnify them for any claims brought by the trust’s beneficiaries, arising from harm to trust assets.
47. Article VII requires Frederick Smith to indemnify Stuart Smith and Douglas Smith . . . stating that “no [t]rustee shall be liable or responsible in any way from any act or default of any co-trustee or for any loss or expense from or occasioned by anything done or neglected to be done by any co-trustee."
III. DISCUSSION
“While a complaint attacked by a motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his entitlement] to relief requires more than labels and conclusions. Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true.” Iannacchino v. Ford Motor Co., 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 195, 1965 (2007). At the pleading stage, the plaintiff must supply “allegations plausibly suggesting (not merely consistent with) an entitlement to relief . . .” Id.
A. The Claims Asserted in This Action Are Barred by Claim Preclusion
“Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action.” O’Neill v. City Mgr. of Cambridge, 428 Mass. 257, 259 (1998). For claim preclusion to apply, there must be “ 1) privity of parties, 2) identify of the claim, and 3) a prior final judgment on the merits.” Freedom Leasing, Inc. v. Schwartzberg, Memorandum and Order Pursuant to Rule 1:28, 53 Mass.App.Ct. 1104, 2001 WL 1429252, at *3 (Nov. 14, 2001), citing Franklin v. No. Weymouth Coop. Bank, 283 Mass. 275, 280 (1933). Those prerequisites are satisfied and claim preclusion applies to the claims asserted in this litigation.
1. Douglas and Stuart Are in Privity With the Other Plaintiffs
The Norfolk litigation was instituted by Douglas and Stuart, individually and as trustees of the trust. The present action was brought by Douglas and Stuart, individually, and several other beneficiaries of the trust. While the parties to the two actions are not identical, claim preclusion nonetheless applies because the other plaintiffs in this action are in privity with Douglas and Stuart insofar as they are trustees of the trust.
“Among the types of relationships that are sufficiently close to permit a finding of privity between parties are situations where the party to the earlier action is an official or agency invested by law with authority to represent the person’s interests.” State Police for Automatic Ret. Assn. v. Difava, 164 F.Sup.2d 141, 148 (D.Mass. 2001). Douglas and Stuart instituted the Norfolk litigation as trustees, for the benefit of all beneficiaries of the trust. Indeed, their complaint in the Norfolk litigation stated explicitly, “the [tjrustees request an interpretation of the [t]rust which would hold Frederick Smith liable to his co-beneficiaries for the tax consequences, property depreciation, and other incidental and consequential damages if his conduct, even if appropriate, causes damages to his co-beneficiaries . . .”
See Restatement (Second) of Judgments, §41 (1982) (“A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefit of a judgment as though he were a party. A person is represented by a party who is . . . [t]he trustee of an estate or interest of which the person is a beneficiaiy”). See also Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass.App.Ct. 86, 100 (1999). Here, Douglas and Stuart’s status as trustees, suing on behalf of all the beneficiaries of the trust, indicates Douglas and Stuart represented the interests of the plaintiffs in this action, such that privity exists and claim preclusion can be applied.
2. The Claims in the Norfolk Litigation Are Identical to the Claims in this Action
“Claim preclusion bars not only relitigation of all matters decided in a prior proceeding but those that could have been litigated, as well.” Gloucester Marine Rys. Corp. v. Charles Parisi, Inc., 36 Mass.App.Ct. 386, 391 (1994). “[A] valid and final judgment in one action will extinguish subsequent claims ‘with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.’ ” McCabe v. Ziady, Civil Action No. 07-1679, 2009 WL 839102, at *5 (Essex Super.Ct. Mar. 16, 2009) (Kern, J.) [25 Mass. L. Rptr. 244], quoting Manego v. Orleans Bd. of Trade, 773 F.2d 1, 5 (1st Cir. 1985). Therefore, the claims pursued in the Norfolk litigation are identical to the claims at issue here, for the purposes of claim preclusion.
“Although a set of facts may give rise to multiple counts based on different legal theories, if the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then *262 those facts represent one cause of action.” Id., quoting Apparel Art Int’l, Inc. v. Amertex Enters., Ltd., 48 F.3d 576, 583-84 (1st Cir. 1995). “As long as the claims derive from the same nucleus of facts, it is immaterial whether the identical legal theories were raised in the earlier action.” State Police for Automatic Ret. Assn. v. Difava, 164 F.Sup.2d at 148, and authorities cited.
“To determine whether facts form a common nucleus, the court considers such factors as ‘whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties’ expectations.” McCabe, 2009 WL 839102, at *5, quoting Restatement (Second) of Judgments, §24.
The claims for declaratory relief and breach of fiduciary duty in the Norfolk litigation share a common nucleus with Count I here. In both cases, the plaintiffs sought relief based on impending tax liability that may arise from Frederick’s efforts to terminate the trust. In both cases, the trust documents serve a critical role insofar as they dictate whether Frederick had authority to unilaterally terminate the trust and the extent to which the other beneficiaries would be entitled to indemnification from him. Consequently, the claims at issue are identical for the purposes of claim preclusion.[4]
Similarly, the claim for tortious interference with advantageous contractual relationships in the Norfolk litigation shares a common nucleus with Counts II and III in this litigation. Both claims rest on the same factual allegation — that Frederick’s conduct prevented the trust from executing a commercial lease, and caused damage. Whether that claim is labeled tortious interference with advantageous contractual relationships, as it was in the Norfolk litigation, or breach of fiduciary duly and a demand for indemnification, as it was in this action, it has the same factual foundation. Therefore, the claims are identical for the purposes of claim preclusion.
The claims asserted in this action “certainly could have been brought in the original action, where [they] represented an alternate theory of recovery closely related to the plaintiffs!’] initial claims.” Travelers Ins. Co., 2006 WL 223854, at *3, citing Heacock v. Heacock, 402 Mass. 21, 23 (1988). Particularly where the claims for indemnification are concerned, “[i]t is impossible to read the complaints in the two subj ect suits and conclude that this case is anything other than an attempted end-run around the first court’s denial of [the plaintiffs’] motion to amend [their] complaint... Claim preclusion and res judicata exist to prevent such maneuvering.” Silva v. City of New Bedford, 677 F.Sup.2d 367, 371-72 (D.Mass. 2009) (citations omitted).
3. The Claims in the Norfolk Litigation Resulted in a Final Judgment on the Merits
“Under Massachusetts law, as elsewhere, a dismissal for failure to state a claim, under Mass.RCiv.P. 12(b)(6), operates as a dismissal on the merits, Mass.R-Civ.P. 41(b)(3), with res judicata effect.” Mestek v. United Pac. Ins. Co., 40 Mass.App.Ct. 729, 731 (1996). Therefore, the disposition of the claims in the Norfolk litigation allows for claim preclusion in this action.
B. Even If Claim Preclusion Did Not Apply, the Claims Would Be Barred By Mass.R.Civ. 12(b)(9)
The “salutary and well established rules against claim splitting which are now comprehended with rule 12(b)(9)” bar the claims advanced in this action. Keen v. Western New England Coll., 23 Mass.App.Ct. 84, 87 (1986). A claim is subject to dismissal under Mass.RCiv.P. 12(b)(9) where, as here, ‘‘all the operative facts relied on to support the present action had transpired prior to the commencement of the first action.” Id, at 85. See also Guindon Ins. Agency, Inc. v. Commercial Union Ins. Co., 15 Mass.App.Ct. 931, 932 (1983).
The plaintiffs suggest that when the Norfolk Superior Court denied their motion to amend their complaint in the Norfolk litigation to add claims seeking indemnification, that court expressed “a clear intent to have these issues carved out in a separate lawsuit.” That argument is wholly without merit.
First, it is unsupported by any citation to legal authority. Second, no reason whatsoever is provided to explain why the denial of the motion to amend in the Norfolk litigation constituted an expression of the court’s wish that those issues proceed in a separate lawsuit. Third, the reasoning at the root of this self-serving interpretation of the court’s decision on the plaintiffs’ motion to amend would undermine the rules against claim splitting discussed above. To wit, any party who was unsuccessful in asserting new claims through a motion to amend could submit those claims in a parallel action, interpreting the original denial of their motion as an expression of “intent to have those issues carved out in a separate lawsuit.”
Frederick’s motions for sanctions under Mass.R.Civ.P. 11 and G.L.c. 231, §6F are denied.
IV. CONCLUSION AND ORDER
For the foregoing reasons, Frederick Smith’s Motion to Dismiss is, in all respects, ALLOWED.

This allegation appears to be based on difficulties in finalizing a lease agreement with a commercial tenant seeking to rent space in property owned by the trust. Douglas and Stuart’s position in the Norfolk litigation was that those difficulties were caused by Frederick.

On January 25, 2011, the court (Garsh, J.) denied a motion to amend the complaint, seeking to add claims for indemnification of the tmst’s beneficiaries for any tax liability arising from termination of the tmst.

If more were needed, Douglas and Stewart “did attempt to bring the instant [indemnification] claim in the original action via a belated, and ultimately unsuccessful, motion to amend [their] initial complaint.” Travelers Ins. Co. v. Royal Ins. Co., Memorandum and Order Pursuant to Rule 1:28, 65 Mass.App.Ct. 1115, 2006 WL 223854, at *3 (Jan. 30, 2006). Douglas and Stuart are “therefore precluded from bringing the same claim again in a subsequent suit.” Id,